ACCEPTED
15-25-00140-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 5:42 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 5:42:52 PM
CHRISTOPHER A. PRINE
Clerk

NO. _____

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AUSTIN, TEXAS

IN RE POWERED BY PEOPLE AND ROBERT FRANCIS O'ROURKE
*Relators*

ORIGINAL PROCEEDING FROM THE 348TH JUDICIAL DISTRICT
OF TARRANT COUNTY, TEXAS
TRIAL COURT NO. 348-367652-2025

PETITION FOR WRIT OF MANDAMUS
Appendix Filed Separately

**Mimi Marziani**
Texas Bar No. 24091906
**Joaquin Gonzalez**
Texas Bar No. 24109935
**Rebecca (Beth) Stevens**
Texas Bar No. 24065381
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Phone: 210-343-5604
mmarziani@msgpllc.com
jgonzalez@msgpllc.com
bstevens@msgpllc.com

**Sean J. McCaffity**
State Bar No. 24013122
Rebecca L. Neumann
State Bar No. 24104455
**SOMMERMAN McCAFFITY, QUESADA & GEISLER L.L.P.**
3811 Turtle Creek Blvd, Ste 1400
Dallas, Texas 75219-4461
Phone: 214-720-0720
smccaffity@textrial.com
rneumann@textrial.com

*COUNSEL FOR RELATORS*

i

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 52.3(a), Relators certify that the following is a complete list of all parties and counsel to the trial court's judgment or order appealed from:

Relators:                          Powered By People and Robert Francis
                                   O' Rourke

Counsel for Relator:               **Mimi Marziani**
                                   Texas Bar No. 24091906
                                   **Joaquin Gonzalez**
                                   Texas Bar No. 24109935
                                   **Rebecca (Beth) Stevens**
                                   Texas Bar No. 24065381
                                   **MARZIANI, STEVENS & GONZALEZ PLLC**
                                   500 W. 2nd Street, Suite 1900
                                   Austin, TX 78701
                                   Phone: 210-343-5604
                                   mmarziani@msgpllc.com
                                   jgonzalez@msgpllc.com
                                   bstevens@msgpllc.com

                                   -and-

                                   **Sean J. McCaffity**
                                   State Bar No. 24013122
                                   **SOMMERMAN McCAFFITY, QUESADA & GEISLER L.L.P.**
                                   3811 Turtle Creek Blvd, Ste 1400
                                   Dallas, Texas 75219-4461
                                   Phone: 214-720-0720
                                   smccaffity@textrial.com

Respondent/Presiding trial judge: Hon. Megan Fahey
348th Judicial District Court
Tarrant County Courthouse
100 North Calhoun St., 3rd Floor
Fort Worth, TX 76196
Phone: 817-884-2715


Real Party in Interest: State of Texas

Counsel for Real Party in Interest: Ken Paxton
Attorney General of Texas
Rob Farquharson
Dep. Chief, Consumer Protection
Division
State Bar No. 24100550
Johnathan Stone
Chief, Consumer Protection Division
State Bar No. 24071779
Office of the Attorney General of Texas
Consumer Protection Division
300 W. 15th St.
Austin, Texas 78701
Phone: (214) 290-8811
Fax: (214) 969-7615
Rob.Farquharson@oag.texas.gov

iv

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................... vii

STATEMENT OF THE CASE ................................................................ 1

STATEMENT OF JURISDICTION...................................................... 3

ISSUES PRESENTED ........................................................................... 5

STATEMENT OF FACTS ....................................................................... 7

ARGUMENT AND AUTHORITIES ................................................... 19

    I.    STANDARD OF REVIEW ................................................... 19

    II.    STATUTES AT ISSUE................................................... 21

    III.  THE TRIAL COURT HAS NO SUBJECT MATTER JURISDICTION TO HEAR THIS SUIT OR RESTRAIN THE RELATORS............................... 21

        A. The plain text of the Deceptive Trade Practices Act requires mandamus to issue........................................................... 22

        B. The Office of the Attorney General can bring claims to restrain or enjoin under Section 17.47(a) *only* if the claims are cognizable under the DTPA.......................................................... 33

    IV.  THE TRIAL COURT'S MODIFIED TEMPORARY ORDER VIOLATES THE TEXAS CONSTITUTION AND IT WAS AN ABUSE OF DISCRETION TO DENY THE RELATORS' MOTION TO DISSOLVE ........................... 42

    V.   THE TRO IS IMPERMISSIBLY OVERBROAD BY RESTRAINING BY GRANTING GREATER RELIEF THAN THE MOVANT IS ENTITLED TO AND BY RESTRICTING LAWFUL CONDUCT ........................................ 54

    VI.  THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING RELATORS' EMERGENCY MOTION TO TRANSFER VENUE................. 56

   A. The State of Texas offered no evidence and alleged no actual facts establishing venue in Tarrant County against Relators ...................... 56

   B. Venue is mandatory in El Paso County because the primary purpose of the State of Texas's suit is to restrain and enjoin the Relators....... 58

VII. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING RELATORS' MOTION FOR EXPEDITED RECIPROCAL DISCOVERY ..... 68

VIII. THE TRIAL COURT ABUSED ITS DISCRETION IN ENTERING AN ANTI-SUIT INJUNCTION AGAINST ACTIONS TAKEN BY A SISTER COURT ........................................................................................ 70

PRAYER ................................................................................................ 75

# TABLE OF AUTHORITIES

## Cases

*Accident Fund Gen. Ins. Co.*,
543 S.W.3d 750 (Tex. 2017) ....................................................... 3

*Alexander v. United States*,
509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) ........................ 38

*Allison v. Fire Ins. Exch.*,
98 S.W.3d 227 (Tex. App.—Austin 2002, pet. granted, judgm't vacated
w.r.m.) ................................................................................ 59

*Amstadt v. U.S. Brass Corp.*,
919 S.W.2d 644 (Tex. 1996) ...................................................... 32

*Arizona Free Enter. Club's Freedom Club PAC v. Bennett*,
564 U.S. 721 (2011) ............................................................... 46

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
945 S.W.2d 812 (Tex.1997) ....................................................... 23

*Atkinson v. Arnold*,
893 S.W.2d 294 (Tex. App.—Texarkana 1995, no writ) ........................ 65

*Ballenger v. Ballenger*,
694 S.W.2d 72 (Tex. App.—Corpus Christi 1985, no writ) ..................... 63

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) ................................................................ 35

*Brammer v. KB Home Lone Star, L.P.*,
114 S.W.3d 101 (Tex. App.—Austin 2003, no pet.) ........................ 42, 47

*Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*,
631 S.W.3d 16 (Tex. 2021) ....................................................... 20

*Brown & Brown of Tex., Inc. v. Omni Metals, Inc.,*
  317 S.W.3d 361 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ..... 28

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ................................................................................ 47

*Burbage v. Burbage,*
  447 S.W.3d 249 (Tex. 2014) ............................................................... 41

*Cath. Leadership Coal. of Texas v. Reisman,*
  764 F.3d 409 (5th Cir. 2014) .............................................................. 46

*Chiriboga v. State Farm Mut. Auto. Ins. Co.,*
  96 S.W.3d 673 (Tex. App.—Austin 2003, no pet.) ................................ 59

*City of Houston v. Kunze,*
  258 S.W.2d 226 (Tex. Civ. App.—Fort Worth 1953) ............................. 63

*Davenport v. Garcia,*
  834 S.W.2d 4 (Tex.1992) .............................................................. Passim

*David Jason W. & Pydia, Inc. v. State,*
  212 S.W.3d 513 (Tex. App. 2006) ....................................................... 36

*Doe v. Boys Clubs of Greater Dallas, Inc.,*
  868 S.W.2d 942 (Tex. App.—Amarillo 1994) ....................................... 25

*Eanes ISD v. Logue,*
  712 S.W.2d 741 (Tex.1986) ................................................................ 18

*Ex parte Stafford,*
  667 S.W.3d 517 (Tex. App.—Dallas 2023) ........................................... 43

*Ex parte Tucci,*
  859 S.W.2d 1 (Tex. 1993) .............................................................. Passim

*Ex parte Tucker*,
110 Tex. 335, 220 S.W. 75 (1920) .............................................. 39, 40, 42

*F.F.P. Operating Partners, L.P. v. Dueney*,
237 S.W.3d 680 (Tex. 2007) ........................................................ 57

*Fairfield Estates L.P. v. Griffin*,
986 S.W.2d 719 (Tex. App.—Eastland 1999, no pet.) ............................ 18

*FDI Inv. Corp. v. S.S.G. Invs.*,
663 S.W.2d 135 (Tex. Civ. App.—Fort Worth 1983, no writ) ................. 51

*Fed. Election Comm'n v. Wis. Right To Life, Inc.*,
551 U.S. 449 (2007) .................................................................. 46

*Flenniken v. Longview Bank and Trust Co.*,
661 S.W.2d 705 (Tex. 1983) ....................................................... 23, 25

*Flores v. Star Cab Coop. Ass'n*,
2008 WL 3980762 (Tex. App.—Amarillo Aug. 28, 2008) ..................... 24

*Frey v. DeCordova Bend Estates Owners Ass'n*,
647 S.W.2d 246 (Tex. 1983) ........................................................ 44

*Golden Rule Ins. Co.*,
925 S.W.2d ........................................................................... 62, 63

*Golden Rule Ins. Co. v. Harper*,
925 S.W.2d 649 (Tex. 1996) ........................................................ 63, 66

*Hajek v. Bill Mowbray Motors, Inc.*,
647 S.W.2d 253 (Tex. 1983) ........................................................ 42

*Harbor Perfusion, Inc. v. Floyd*,
45 S.W.3d 713 (Tex. App.—Corpus Christ-Edinburgh 2001, no pet.)...... 18

*Heckman v. Williamson Cty*,
   369 S.W.3d 147 (Tex. 2012) ...................................................................... 17

*Holubec v. Brandenberger*,
   111 S.W.3d 32 (Tex. 2003) ........................................................................ 48

*Hunt v. City of Diboll*,
   574 S.W.3d 406 (Tex. App.—Tyler 1994, pet. denied) ............................ 17

*Huynh v. Blanchard*,
   694 S.W.3d 648 (Tex. 2024) ................................................................ 48, 49

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*,
   538 U.S. 600 (2003) .................................................................................. 35

*In re Abbott*,
   601 S.W.3d 802 (Tex. 2020) (orig. proceeding) ........................................ 3

*In re Acad., Ltd.*,
   625 S.W.3d 19 (Tex. 2021) (orig. proceeding) ....................................... 17

*In re Alford Chevrolet-Geo*,
   997 S.W.2d 173 (Tex. 1999, orig. proceeding) ....................................... 60

*In re Allstate Indem. Co.*,
   622 S.W.3d 870 (Tex. 2021) (orig. proceeding) ..................................... 17

*In re Applied Chemical Magnesias Corp.*,
   206 S.W.3d 114 (Tex. 2006) ...................................................................... 4

*In re Cnty. of Hidalgo*,
   655 S.W.3d 44 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.) ........ 3

*In re Continental Airlines, Inc.*,
   988 S.W. 733, 736 (Tex. 1988) ............................................................... 52

*In re County of Galveston,*
   211 S.W.3d 879 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) .................................................................................................... 59

*In re Geomet Recycling LLC,*
   578 S.W.3d 82 (Tex. 2019) (orig. proceeding) ........................................ 18

*In re Hotze,*
   682 S.W.3d 877 (Tex. 2023) ..................................................................... 47

*In re Labatt Food Serv., L.P.,*
   279 S.W.3d 640 (Tex. 2009) (orig. proceeding) ..................................... 18

*In re Mo. Pac. R.R. Co.,*
   998 S.W.2d 212 (Tex. 1999) ..................................................................... 60

*In re Morice,*
   2011 WL 4101141 (Tex. App.—Houston [1st Dist.] Sept. 15, 2011, orig. proceeding) ................................................................................................ 56

*In re Office of Att'y Gen.,*
   257 S.W.3d 695 (Tex. 2008) (orig. proceeding) ....................................... 3

*In re Panchakarla,*
   602 S.W.3d 536 (Tex. 2020) (orig. proceeding) ..................................... 17

*In re Sanofi-Aventis U.S., LLC,*
   711 S.W.3d 732 (Tex. App—15th Dist. 2025) ................................. 50, 51

*In re Tarrant County,*
   345 S.W.3d 784 (Tex. App.—Dallas 2011, orig. proceeding) ................. 54

*In re Ten Hagen Excavating, Inc.,*
   435 S.W.3d 859 (Tex. App.—Dallas 2014) ............................................. 60

*In re Tex. Dep't of Transp.,*
   218 S.W.3d 74 (Tex. 2007) ........................................................... 50, 52, 58

*In re Tex. Nat. Res. Conservation Comm'n,*
   85 S.W.3d 201 (Tex. 2002) (orig. proceeding) ........................................... 3

*In re Texas Ass'n of School Bds., Inc.,*
   169 S.W.3d 653 (Tex. 2005) ................................................................. 60

*Joachim v. Chambers,*
   815 S.W.2d 234 (Tex.1991) ................................................................. 18

*Kinney v. Barnes,*
   443 S.W.3d 87 (Tex. 2014) ........................................................... Passim

*Lakeway Psychiatry & Behav. Health, PLLC v. Brite,*
   656 S.W.3d 621 (Tex. App.—El Paso 2022, no pet.) .............................. 63

*Langdeau v. Burke Inv. Co.,*
   163 Tex. 526, 358 S.W.2d 553 (1962) .............................................. 59, 60

*Legal Sec. Life Ins. Co. v. Trevino,*
   605 S.W.2d 857 (Tex. 1980) ................................................................. 51

*Lippincott v. Whisenhunt,*
   462 S.W.3d 507 (Tex. 2015) .......................................................... 20, 21

*Lukasik v. San Antonio Blue Haven Pools, Inc.,*
   21 S.W.3d 394 (Tex. App.—San Antonio 2000, no pet.) ........................ 24

*Marceaux v. Lafayette City-Par. Consol. Gov't,*
   731 F.3d 488 (5th Cir. 2013)................................................................. 48

*Markel v. World Flight, Inc.,*
   938 S.W.2d 74 (Tex. App.—San Antonio 1996, no writ).................. 43, 44

*Marketshare Telecom, L.L.C. v. Ericsson, Inc.,*
   198 S.W.3d 908 (Tex. App.—Dallas 2006, no pet.) .............................. 42

*Marmon v. Mustang Aviation, Inc.,*
   430 S.W.2d 182 (Tex. 1968) ........................................................ 57

*Melody Home Mfg. Co. v. Barnes,*
   741 S.W.2d 349 (Tex. 1987) ........................................................ 24

*Mendoza v. American Nat'l Ins. Co.,*
   932 S.W.2d 605 (Tex. App.—San Antonio 1996, no writ) ...................... 24

*Miller v. Keyser,*
   90 S.W.3d 712 (Tex. 2002) ........................................................ 36

*Millwrights Local Union No. 2484 v. Rust Engineering Co.,*
   433 S.W.2d 683 (Tex. 1968) ........................................................ 43

*Mother & Unborn Baby Care of N. Tex., Inc. v. Doe,*
   689 S.W.2d 336 (Tex. App.—Fort Worth 1985, writ dism'd) .................. 44

*N.Y. Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ................................................................ 46

*NCNB Texas National Bank v. Coker,*
   765 S.W.2d 398 (Tex.1989) ........................................................ 18

*Org. for a Better Austin v. Keefe,*
   402 U.S. 415 (1971) ................................................................ 39

*Paxton v. Annunciation House, Inc.,*
   2025 WL 1536224 (Tex. May 30, 2025) ........................................ 35, 65

*Polaris Inv. Mgmt. Corp. v. Abascal,*
   892 S.W.2d 860 (Tex. 1995) ........................................................ 58

*Portland Sav. & Loan Ass'n v. Bevill, Bresler & Schulman Gov't Secs., Inc.,*
   619 S.W.2d 241 (Tex. Civ. App.—Corpus Christi 1981, no writ) ............ 57

*PPG Indus., Inc. v. JMB/Houston Centers Partners, Ltd.,*
  146 S.W.3d 79 (Tex. 2004) ...................................................... 22, 23

*Riley v. Nat'l Fed'n of the Blind,*
  487 U.S. 781 (1988) ................................................................... 35

*Schaumburg v. Citizens for a Better Environment,*
  444 U.S. 620 (1980) ................................................................... 35

*Sherman Simon Enters., Inc. v. Lorac Serv. Corp.,*
  724 S.W.2d 13 (Tex. 1987) ........................................................ 25

*Silguero v. CSL Plasma, Inc.,*
  579 S.W.3d 53 (Tex. 2019) ........................................................ 20

*Smith v. Baldwin,*
  611 S.W.2d 611 (Tex. 1980) ...................................................... 37

*Star-Telegram, Inc. v. Walker,*
  834 S.W.2d 54 (Tex. 1992) ........................................................ 41

*State of Texas v. Life Partners,*
  243 S.W.3d 236 (Tex. App.—Waco 2007) ................................... 51

*Tarrant Reg'l Water Dist. v. Johnson,*
  572 S.W.3d 658 (Tex. 2019) ...................................................... 21

*Tex. Dep't of Criminal Justice v. Rangel,*
  595 S.W.3d 198 (Tex. 2020) ...................................................... 20

*Tex. Mut. Ins. Co. v. Sur. Bank, N.A.,*
  156 S.W.3d 125 (Tex. App.—Fort Worth 2005, no pet.) ............. 38, 42, 45

*Tex. Specialty Trailers, Inc. v. Jackson & Simmen Drilling Co.,*
  2009 WL 2462530 (Tex. App.—Fort Worth Aug. 13, 2009, pet. denied) 57

xiv

*TGS–NOPEC Geophysical Co. v. Combs,*
  340 S.W.3d 432 (Tex. 2011) ....................................................................... 21

*Transp. Ins. Co. v. Faircloth,*
  898 S.W.2d 269 (Tex. 1995) ................................................................... 21, 22

*Villalobos v. Holguin,*
  208 S.W.2d 871 (1948) .................................................................................. 48

*Walker v. Packer,*
  827 S.W.2d 833 (Tex. 1992) ............................................................... 3, 17, 61

*Whitson v. Harris,*
  682 S.W.2d 423 (Tex. App.—Amarillo 1984, no writ) ...................... 54, 57

*Wich v. Fleming,*
  652 S.W.2d 353 (Tex. 1983) ........................................................................ 57

*Wichita County v. Hart,*
  892 S.W.2d 912 (Tex. App.—Austin 1994) ..................................... passim

*Wyrick v. Bus. Bank of Texas, N.A.,*
  577 S.W.3d 336 (Tex. App.—Houston [14th Dist.] 2019, no pet.) .......... 62

*Youngkin v. Hines,*
  546 S.W.3d 675 (Tex. 2018) ................................................................... 20, 21

Statutes

Article I, Section 8 of the Texas Constitution ...................................... Passim

Tex. Bus. & Com. Code § 17.56 .......................................................... 56, 57

Tex. Bus. & Com. Code § 17.45 ............................................................ Passim

Tex. Bus. & Com. Code § 17.46 ............................................................ Passim

Tex. Bus. & Com. Code § 17.47 ............................................................ Passim

Tex. Bus. & Com. Code § 17.01 .................................................................... 19

Tex. Civ. Prac. & Rem. Code §§ 15.011-15.039 ........................................ 56

Tex. Civ. Prac. & Rem. Code § 15.0642 ........................................................ 4

Tex. Civ. Prac. & Rem. Code § 37.009 ........................................................ 63

Tex. Civ. Prac. & Rem. Code §§ 15.001(b), 15.016, 15.038 ...................... 58

Texas Civ. Prac. & Rem. Code § 65.023 ........................................... 5, 19, 52

Tex. Const. Art. V, § 6(a) ................................................................................ 3

Tex. Elections Code § 253.035 .................................................................... 36

Tex. Gov. Code § 22.221(c-1) ........................................................................ 3

Tex. Gov. Code § 311.011(b) ...................................................................... 21

Tex. Gov. Code § 311.016 (Vernon 2005) ............................................. 55, 56

Tex. Pen. Code § 36.08.................................................................................. 36

Tex. Pen. Code § 36.10.................................................................................. 36

Rules

Tex. R. App. P. 52.3.................................................................................. 2, 68

Tex. R. App. P. 53.2.................................................................................... 19

Tex. R. Civ. P. 87(3)(a) .............................................................................. 50

Tex. R. Civ. P. 176.6(e) .............................................................................. 66

## Other Authorities

*Injunctions in Defamation Cases,*
    57 Syracuse L.Rev. 157 (2007) ............................................................. 38

## STATEMENT OF THE CASE

The State of Texas, through the Office of the Attorney General, Consumer Protection Division, brought a suit primarily for injunctive relief under the Texas Deceptive Trade Practices Act for alleged false advertising in the solicitation of political donations against the Relators. The Respondent is The Honorable Megan Fahey presiding over the 348th Judicial District Court of Tarrant County, Texas.

The Respondent abused its discretion on at least five separate occasions. *First*, the Respondent abused its discretion in both granting and modifying a Temporary Restraining Order ("TRO") over Relators' objections because the trial court has no subject matter jurisdiction over the case. *Second*, even if the Respondent had subject matter jurisdiction and proper venue to entertain this suit, the Respondent nonetheless abused its discretion in granting and modifying an overly broad and vague TRO which acts as an unconstitutional prior restraint in violation of Article I, Section 8 of the Texas Constitution. *Third*, the Respondent abused its discretion in denying Relators' Emergency Motion to Transfer Venue because it ignored the existence of mandatory venue statutes dictating this case be tried in El Paso County and

had no factual or legal basis to find venue was proper in Tarrant County. *Fourth*, the Respondent abused its discretion in denying Relators' expedited motion for reciprocal discovery to give the State of Texas an unfair strategic advantage in any purported temporary injunction hearing and permit the Attorney General to conduct trial by ambush. *Fifth*, the Respondent abused its discretion in entering a TRO restraining Relators from pursuing claims against the Attorney General in El Paso and that purports to now set for a temporary injunction hearing on less than one week notice claims that the Attorney General has never been authorized to be filed.

Relators seek relief from the Court's orders modifying the TRO and denying Relators' Emergency Motion to Dissolve TRO entered on August 15, 2025 and August 19, 2025, respectively. The Relators also seek relief from the Court's order denying their Emergency Motion to Transfer Venue entered on August 15, 2025.

2

## STATEMENT OF JURISDICTION

This Court of Appeals has jurisdiction to issue a writ of mandamus under TEX. GOV. CODE § 22.221(c-1) and TEX. CONST. ART. V, § 6(a). Mandamus issues to "correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other adequate remedy at law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992).

Mandamus is appropriate when a TRO is improvidently granted; it permits a party challenging the TRO to seek immediate relief. *In re Cnty. of Hidalgo*, 655 S.W.3d 44, 55 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.) ("Mandamus review of a trial court's temporary restraining order is proper because such an order cannot be appealed; thus, the party against whom such injunctive relief is granted lacks an adequate remedy by appeal"); *In re Abbott*, 601 S.W.3d 802, 813 (Tex. 2020) (orig. proceeding) (per curiam); *In re Office of Att'y Gen.*, 257 S.W.3d 695, 698 (Tex. 2008) (orig. proceeding) (per curiam); *In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 207 (Tex. 2002) (orig. proceeding).

Mandamus is also appropriate when a court exercises jurisdiction when no subject matter jurisdiction exists. *See In re Accident Fund Gen. Ins. Co.*, 543

S.W.3d 750, 755 (Tex. 2017) (conditionally granting writ of mandamus to require dismissal for lack of subject matter jurisdiction).

Finally, mandamus is appropriate when the trial court fails to apply a mandatory venue statute. *See* TEX. CIV. PRAC. & REM. CODE § 15.0642; *In re Applied Chemical Magnesias Corp.*, 206 S.W.3d 114, 116 (Tex. 2006) (conditionally issuing writ of mandamus to transfer venue).

1.  The Texas Deceptive Trade Practices Act ("DTPA") only governs consumer transactions, which require a person to seek or acquire, through purchase or lease, a good or a service. The Office of the Attorney General lacks standing to pursue claims under the auspices of the DTPA for transactions that do not involve a consumer or goods or services. Does the trial court have subject matter jurisdiction to authorize relief under the DTPA when the challenged transactions at issue relate only to political speech and requests for political donations in which no good or service or thing of value is sought or acquired?

2.  Do Article I, Section 8 of the Texas Constitution preclude the application of the DTPA to political speech or requests for political donations when the primary purpose of such transactions is protected core political speech?

3.  Does the TRO act as an unconstitutional prior restraint on speech in violation of Article I, Section 8 of the Texas Constitution?

4.  Is the TRO impermissibly overbroad and vague in that it grants more relief than was requested in the petition and enjoins lawful conduct?

5.  The State of Texas's lawsuit against Relators primarily seeks injunctive relief under the DTPA to restrain and enjoin political speech. The claim is governed by a mandatory venue statute, which requires suit to be brought in the county of residence of the person sought to be restrained. Does the mandatory venue statute provisions in Texas Civil Practice & Remedies Code § 65.023 governing injunctions trump the permissive venue statute set forth in Texas Business & Commerce Code § 17.47?

6.  Did the Respondent abuse its discretion in denying reciprocal discovery to the Relators to permit them to obtain *any* discovery in advance of a temporary injunction hearing?

7.  Did the Respondent abuse its discretion in entering an anti-suit injunction against the Relators that precludes their ability to vindicate

their constitutional right to free speech as well as contest the propriety of a *quo warranto* proceeding brought in a county in which they do not maintain a residence?

## STATEMENT OF FACTS

This case concerns the unprecedented weaponization of the Texas Attorney General's civil enforcement powers to silence political opposition and retaliate against protected speech and political activities. In a brazen abuse of state authority, Attorney General Ken Paxton, acting in his official capacity but contemporaneously using his government actions as a platform for his own campaign for United States Senate, launched a sham enforcement proceeding against Powered by People—a Texas nonprofit organization founded by former Congressman Beto O'Rourke—solely because of the organization's vocal opposition to congressional redistricting efforts and Mr. O'Rourke's emergence as a potential political rival in Paxton's upcoming 2026 U.S. Senate campaign.

This is not a case about legitimate government oversight or regulatory compliance. Rather, it represents a calculated effort by an elected official to deploy the vast civil enforcement machinery of his office as a personal weapon against political opponents, transforming what should be neutral law enforcement tools into instruments of partisan retaliation. The Attorney General has grossly overreached, asserted claims under the Texas Deceptive Trade Practices Act to restrain constitutionally protected speech, and used

7

that same protected political activity as a basis to forum shop into an improper venue. The Respondent ignored the plain text of the DTPA, the facts establishing that the DTPA does not apply to Relators' constitutionally protected speech, and the existence of mandatory venue statutes dictating this case must be tried, if at all, in El Paso County, Texas.

## A. THE PARTIES AND THEIR POLITICAL RELATIONSHIP.

Powered by People is a Texas nonprofit corporation that operates as a political organization under federal tax law. MR.0279. Founded in 2019 by former Congressman Beto O'Rourke, the organization is dedicated to expanding democratic participation through voter registration and mobilization efforts. MR.0970-71. With seven full-time employees and thousands of volunteers across Texas, Powered by People has registered hundreds of thousands of Texans to vote and engaged in various community service projects, including disaster relief efforts and pandemic response activities. MR.0085.

The organization maintains its principal place of business in El Paso, Texas, and operates transparently as a registered political organization. MR.0280. It files regular campaign finance reports with both the Federal

Election Commission and the Texas Ethics Commission, making its financial activities transparent and publicly available as required by law. *Id.*

Ken Paxton serves as Texas Attorney General and wields considerable power under state law. However, the Attorney General is not merely a disinterested law enforcement official in this matter. He has publicly identified himself as a candidate for the U.S. Senate in 2026 and has specifically targeted Mr. O'Rourke as a likely opponent in that race. MR.0504. In April 2025, Paxton used social media to mock O'Rourke's potential Senate candidacy, posting: "Did you hear this? Beto O'Rourke said he might run for Senate again! Chip in now to tell Beto 'No thanks!'" alongside a fundraising solicitation. *Id.* He has gone on to live tweet his legal action against his perceived political opponent from both his officeholder and his campaign social media accounts. *See id.*; MR.0947-48. He has further used his office's targeting of Mr. O'Rourke as a talking point to criticize his Republican Primary opponent, incumbent United States Senator John Cornyn.

This political dynamic forms the essential backdrop for understanding the Attorney General's subsequent actions against Powered by People. Far from representing legitimate law enforcement, the investigation is designed

to handicap a political rival and discourage protected associational activities against Texas's mid-decade congressional redistricting efforts.

## B. The Precipitating Political Activities.

In July 2025, Texas Republicans initiated efforts to redraw the state's congressional districts mid-decade. This redistricting effort, occurring outside the normal decennial redistricting cycle, has been the source of heated political debate and political action both statewide and nationally.

Mr. O'Rourke and Powered by People are prominent critics of these redistricting efforts. MR.0172. On July 21, 2025, O'Rourke appeared on PBS NewsHour and argued that President Trump "knows he will lose the slim majority they have in the House of Representatives unless they rig the game mid-decade, which is what they're trying to do in Texas." *See id.* Three days later, at a large public rally at the Texas Capitol, O'Rourke accused Republicans of "play[ing] games . . . in order to maximize [their] political power" at the expense of flood victims. *Id.*

These public statements represented classic political speech on matters of significant public concern. O'Rourke was exercising his fundamental constitutional rights to criticize government action and advocate for his

preferred policies. Such speech lies at the very core of constitutional protection.

In support of his political opposition to the redistricting efforts, O'Rourke made grassroots fundraising appeals for donations to Powered by People, stating his desire to "have the backs of these heroic state lawmakers" who opposed the redistricting and to support Texas-based organizations sharing his opposition to the proposed maps. MR.0259. This fundraising activity was entirely lawful and represents precisely the type of political association and speech that the Texas and United States Constitutions are designed to protect.

Notably, such political fundraising tied to policy advocacy is commonplace among political figures. Indeed, Defendant Paxton himself has engaged in identical conduct, imploring donors to contribute to help him "stop Biden's open border policy" and "stop Democrats and RINOs efforts to takeover [sic] TX." MR.0259.

## C.    The Retaliatory Government Action

Rather than respecting the legitimacy of political opposition, Defendant Paxton retaliated against Powered by People's protected activities. First, Paxton issued a press release announcing an "investigation" into what he

characterized as "Beto O'Rourke's Radical Group for Unlawfully Funding Runaway Democrats." MR.0316. The press release's inflammatory language betrayed its retaliatory purpose. Paxton characterized lawful political contributions as "Beto Bribes" and accused the organization of "unlawfully funding runaway Democrats," despite admitting he lacked evidence to support such allegations. MR.0320.

The timing of this announcement was not coincidental. It came immediately after O'Rourke's high-profile criticism of Republican redistricting efforts and his successful fundraising appeals on behalf of Democratic legislators. The investigation was transparently designed to punish protected political speech and discourage future opposition to Paxton's preferred policies.

In a Newsmax interview on August 6, 2025, Paxton openly acknowledged he lacked evidence to support his allegations against Powered by People. MR.0497. He admitted that while he did not have "details" to support his claims, he wanted to use the "investigation" to "find out if they've done anything inappropriate." This admission is remarkable for its candor. Paxton essentially confessed to launching an investigation not because he possessed evidence of wrongdoing, but because he hoped to discover

wrongdoing through the investigative process itself. *Id.* Such an approach represents the very definition of a fishing expedition and demonstrates the absence of the specific, articulable facts that should predicate any legitimate investigation. The Attorney General first attempted to investigate Powered by People via a Request To Examine ("RTE") served in El Paso County, with a 48 hour deadline to respond. That RTE is the subject of a motion for protective order filed in El Paso County District Court. *See id.*

D.    **The Attorney General Initiates a Sham Injunction Proceeding in Tarrant County.**

Following the service of the RTE, Powered by People's counsel requested reasonable extensions of the RTE deadline—first seeking a two-week extension, then a more modest extension until August 16, 2025. Paxton's office either rejected these requests outright or ignored them entirely. MR.0065-66. Instead of working with counsel to resolve the outstanding RTE's in a professional process that respected the due process rights of Powered by People and O'Rourke, the Attorney General abruptly changed course and, on August 8, 2025, filed an emergency injunctive lawsuit in Tarrant County asserting that ongoing violations of Texas's Deceptive Trade Practices Act needed to be enjoined. MR.0001. Of course, nothing had

13

materially changed from less than 48 hours earlier when it had served the RTE's in El Paso. No new facts were learned or discovered and the Attorney General still had no basis to assert any claims. Yet, despite his ethical obligations to have a good faith basis to bring suit, he filed suit and sought an ex parte emergency TRO to restrain and enjoin Relators political speech. MR.0001. Rather than conducting a professional investigation based on specific evidence of wrongdoing, Paxton used his office to wage a public campaign against a political rival.

**E.      The Respondent Abused Its Discretion In Granting and Modifying the TRO and Denying A Timely Motion to Transfer Venue.**

After filing its lawsuit in Tarrant County, the Attorney General immediately requested an emergency TRO, which the Court granted at 5:32 p.m. on Friday, August 8, 2025.

The Respondent granted the TRO without any factual or legal basis to support the relief and the TRO constitutes an unconstitutionally overbroad prior restraint of political speech and the freedom of association. MR.0020-22. The modified TRO additionally grants more relief than is requested in the Attorney General's petition by enjoining "any filing entity or foreign filing entity in active concert or participation with Defendant Powered by People

14

and/or Defendant O'Rourke (including banks, financial institutions, and ActBlue), are immediately restrained from removing any property or funds that belong to, or are being held for, Defendant Powered by People and/or Defendant O'Rourke, from the State of Texas during the pendency of this lawsuit," MR.0393; whereas the petition only seeks "[t]emporary and permanent injunctive relief prohibiting Defendant PBP from removing any property or funds from the State of Texas during the pendency of this lawsuit." MR.0211. The TRO further fails to state with particularity facts that provide a basis for a showing of irreparable harm.

On August 11, 2025, the Relators filed an Emergency Motion to Transfer Venue to move the case to El Paso because if a suit seeking injunctive relief against the Relators was to proceed, it needed to be in the county where the restrained parties resided. MR.0029. On August 12, 2025, the Attorney General then filed an Emergency Motion to Modify the TRO, a baseless Motion for Contempt, and an Emergency Motion for Expedited Discovery. MR.0125; MR.0149; MR.0162.

On August 14, 2025, the Respondent conducted a hearing on the Relators' Emergency Motion to Transfer Venue and the State's Motion to Modify the TRO and Motion for Expedited Discovery. *See* MR.0224; MR.0246.

15

The Respondent denied the Emergency Motion to Transfer Venue and entered an order modifying its TRO on August 15, 2025. MR.0391; MR.0396. The Court set the Relators' previously-filed Motion to Dissolve TRO on August 19, 2025. After a short hearing on August 19th, the Respondent denied the Motion to Dissolve TRO. MR.0446.

Notably, the following dispositive facts were before the Respondent and uncontroverted:

- Powered by People is a Texas nonprofit corporation that operates as a "political organization" for the purpose of directly or indirectly accepting contributions or making expenditures to influence elections; MR.0050-52.

- Powered by People sells no goods or services. Its business is purely associational and to promote political speech;*id.*

- Powered by People's primary place of business in El Paso County, Texas and has no staff members residing in Tarrant County;*id.*

- Between June 1, 2025 and August 11, 2025, Powered by People made no transfer of funds or provision of other benefits to any Texas Democratic lawmaker in any location, including Tarrant County;*id.*

- All money received since June 1, 2025 were donations and no goods or services were ever provided to donors by Powered by People in exchange for any donations received;*id.*

- The sole event the State complained about in its lawsuit that occurred in Tarrant County was a political rally to generate public support and political action against Governor Abbott's efforts to

16

redistrict the State of Texas and no goods or services were sold at the political rally by Powered by People; *id.* and

- Powered by People did not make any offers to fundraise or help pay for legislative fines, hotel, and travel expenses in exchange for any political action or restraint and made no statements to public officials promising any benefit, pecuniary gain or pecuniary advantage. *Id.*

Not a single one of the foregoing facts was controverted during either the hearing on the Motion to Transfer Venue or the Motion to Dissolve the TRO. Instead, the State relied exclusively on its pleading to allege venue was proper, but those facts were specifically denied both in the Emergency Motion to Transfer Venue and the declarations submitted to support the motion. MR.0034-52. The State, however, produced no contrary evidence but relied on its conclusory pleadings to assert – without factual support – that "transactions occurred in Tarrant County" and "Defendants have done business in Tarrant County." MR.0200. The evidentiary record before the Court established that none of this was true, yet the Respondent ignored both the evidence and the State's burden of proof and denied the venue motion.

Similarly, the Respondent ignored the evidence that no transactions occurred in Tarrant County and the events that did occur in Tarrant County were solely political speech. No goods or services were sold in Tarrant County or to Tarrant County donors. MR.0050-52. The State identified no such

17

qualifying transaction to provide a basis to state a cognizable claim under the DTPA. Accordingly, the Respondent should have denied the TRO, or at a minimum, dissolved the TRO once it was clear that the State did not properly bring suit under the DTPA and had no standing to do so.

The facts of this case reveal a troubling abuse of governmental power that strikes at the heart of democratic governance. The Attorney General has transformed the enforcement authority of his office into a weapon against political opponents, violating fundamental constitutional principles in the process and ignoring the plain text and spirit of the DTPA. The pattern of retaliatory conduct, the absence of legitimate justification, and the immediate harm to protected rights demand swift judicial intervention to prevent further constitutional violations and preserve the rule of law.

## ARGUMENT AND AUTHORITIES

Relators seek immediate mandamus relief from this Court to either dismiss the underlying case for lack of subject matter jurisdiction or to vacate two trial court orders and mandate a transfer of venue to El Paso County. Standing is a constitutional prerequisite to suit. *Heckman v. Williamson Cty*, 369 S.W.3d 147, 150 (Tex. 2012). A plaintiff that cannot bring a claim under the DTPA has no standing to state a cognizable claim and the action must be dismissed for want of jurisdiction. *See Hunt v. City of Diboll*, 574 S.W.3d 406, 433 (Tex. App.—Tyler 1994, pet. denied).

## I. STANDARD OF REVIEW

Mandamus relief is an extraordinary remedy. *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding). The party seeking mandamus relief must show both that the trial court clearly abused its discretion and that the party has no adequate remedy by appeal. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (orig. proceeding). Mandamus relief is also appropriate when the trial court's order is void rather than voidable. *In re Panchakarla*, 602 S.W.3d 536, 539 (Tex. 2020) (orig. proceeding).

A trial court abuses its discretion when a decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.*; *see Walker v.*

19

*Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). We defer to a trial court's factual determinations that have evidentiary support, but we review the trial court's legal determinations *de novo*. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). An error of law or an erroneous application of the law to the facts is always an abuse of discretion. *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 91–92 (Tex. 2019) (orig. proceeding). "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Packer*, 827 S.W.3d at 840 (Tex. App.—Fort Worth 1992) *(citing Joachim v. Chambers,*815 S.W.2d 234, 240 (Tex.1991)(trial court abused discretion by misinterpreting Code of Judicial Conduct); *NCNB Texas National Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989) (trial court abused discretion by failing to apply proper legal standard to motion to disqualify counsel); *Eanes ISD v. Logue,* 712 S.W.2d 741, 742 (Tex.1986) (trial court abused discretion by erroneously finding constitutional violation). Injunctions that enjoin Defendants from "conducting lawful activities" and "from exercising [their] legal rights" are "overly-broad" and an "abuse[]" of the "trial court's discretion." *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 718 (Tex. App.—Corpus Christ-

20

Edinburgh 2001, no pet.) (quoting *Fairfield Estates L.P. v. Griffin*, 986 S.W.2d

719, 723 (Tex. App.—Eastland 1999, no pet.)). Similarly, a TRO that

"afford[s]" the movant "more relief than it was entitled to" is an abuse of

discretion.

## II.     STATUTES AT ISSUE

### A.     Texas Business & Commerce Code § 17.47(a)[1] governing the State's DTPA injunction claim states:

Whenever the consumer protection division has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by this subchapter, and that proceedings would be in the public interest, the division may bring an action in the name of the state against the person to restrain by temporary restraining order, temporary injunction, or permanent injunction the use of such method, act, or practice.

### B.     Texas Civil Practice & Remedies Code § 65.023 governing venue injunction suits states:

Except as provided by Subsection (b), a writ of injunction against a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled. If the writ is granted against more than one party, it may be tried in the proper court of the county in which either party is domiciled.

## III.    THE TRIAL COURT HAS NO SUBJECT MATTER JURISDICTION TO HEAR THIS SUIT OR RESTRAIN THE RELATORS.

---

[1] The entire Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE § 17.01, et. seq. is attached in the Appendix in accordance with TEX. R. APP. P. 53.2(k)(1)(c).

21

The trial court does not have subject matter jurisdiction over this suit because the State of Texas has no standing to bring the claims it pleads against Powered By People or Robert Francis O'Rourke. The Office of the Attorney General asserts a claim under Section 17.47(a) of the Texas Business & Commerce Code to restrain and enjoin the Relators from engaging in protected political speech, not to protect consumers against deceptive practices related to the purchase or sale of goods and services. Because the DTPA does not govern transactions between political donors and donees, there is no statutory authority or basis for the Office of the Attorney General to act. The State of Texas has no standing to sue for the conduct it challenges.

## A. The plain text of the Deceptive Trade Practices Act requires mandamus to issue.

Courts must construe statutes according to their plain language and plain meaning. "In construing a statute," courts "'first look to the statute's plain language,' and '[i]f that language is unambiguous, [courts] interpret the statute according to its plain meaning.'" *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 209–10 (Tex. 2020) (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam)). Interpretation of the text must be done "in light of the statute as a whole," "not in isolation."

*Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019); *see also Youngkin v. Hines*, 546 S.W.3d 675, 680-81 (Tex. 2018). Further, courts "may not impose [their] own judicial meaning on a statute by adding words not contained in the statute's language," and courts "presume that 'the Legislature purposefully omitted words it did not include.'" *Id.* (quoting *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019)); *see also Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*, 631 S.W.3d 16, 24 (Tex. 2021) ("We further 'presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted.'" (quoting *Lippincott*, 462 S.W.3d at 509)).

To that end, "no court, including [the Supreme Court of Texas], can alter or augment statutory text by announcing tests to aid the application of the statute." *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 665 (Tex. 2019). In accordance with these bedrock principles, "[c]ourts must adhere to legislative definitions of terms when they are supplied." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *see also* Tex. Gov't Code § 311.011(b); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("If a statute . . . assigns a particular meaning to a term, we are bound by the statutory usage.").

This bedrock rule applies to the DTPA. *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 273–74 (Tex. 1995) (overturning trial court's decision to substitute "ordinary person" for "consumer" in interpreting the DTPA). As the Supreme Court of Texas has noted, the "DTPA defines a consumer as 'an individual … who seeks or acquires by purchase or lease, any goods or services.'" *Id.* at 274 (quoting DTPA § 17.45(4)).

It follows that where the Attorney General's Consumer Protection Division (the specific division named in the DTPA with the right to act under the statute, see DTPA § 17.47(a)), it must be on behalf of consumers as defined in the statute. Further, "[t]he DTPA . . . defines the terms 'goods and services.' Section 17.45(1) defines 'goods' as 'tangible chattels or real property purchased or leased for use.'" *Transp. Ins. Co.*, 898 S.W.2d at 274 (quoting DTPA § 17.45(1))). And the DTPA defines "'services' as 'work, labor, or service *purchased or leased for use*.'" (quoting DTPA § 17.45(1)–(2)). (emphasis in original). In line with the longstanding statutory interpretation principles outlined above, the Supreme Court of Texas emphasized that courts "are bound to construe these terms in accordance with their statutory definitions." *Transp. Ins. Co*, 898 S.W.2d at 274. Following these long-

24

standing principles requires issuance of mandamus to direct a dismissal of the case.

>    1. *The purpose of the DTPA is to protect the consumers from deceptive or fraudulent activity in the purchase or sale of goods and services.*

The entire purpose of the DTPA is to protect "consumers," not permit the Office of the Attorney General to weaponize civil enforcement proceedings to chill core political speech.

"The DTPA's primary goal was to protect consumers by encouraging them to bring consumer complaints." *PPG Indus., Inc. v. JMB/Houston Centers Partners, Ltd.*, 146 S.W.3d 79, 84 (Tex. 2004). "The Legislature did not intend the DTPA for everybody. It limited DTPA complaints to "consumers," and excluded a number of parties and transactions from the DTPA, including claims by businesses with more than $25 million in assets, and certain claims in which consumers were represented by legal counsel." *Id.* at 85. (citing *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 815 (Tex.1997) (holding "consumer" includes intended beneficiary of goods or services). The DTPA did not include political solicitations or political speech among its regulated conduct or in the definitions capturing what qualifies as a protected consumer transaction. *See id.* at 84. ("A statute's silence can be significant.").

25

2. *The DTPA only affords relief to "consumers," which are carefully defined to only include actual commercial transactions.*

The DTPA defines "consumer" as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is controlled by a corporation or entity with assets of $25 million or more." TEX. BUS. & COM. CODE § 17.45(4). Additionally, the goods or services must be sought or acquired "for use."

It is well-settled law in Texas that only "consumers" may bring claims for relief under the DTPA because the deceptive acts in Section 17.46 only apply to consumer transactions. To have standing to pursue a DTPA claim for relief, a plaintiff *must* be a consumer. *Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 707 (Tex. 1983).[2] Consumer status is an essential

---

[2] To be clear, Relators are not arguing that the Attorney General must be the actual "consumer" to assert a claim under the consumer protection divisions of the DTPA. In other words, Attorney General Paxton need not have donated to Powered By People and been fooled in doing to qualify as a viable claimant. Clearly, the Attorney General may act, through the DTPA, on behalf of the public and Texas consumers. But there is no law that permits even the Attorney General to avoid the fundamental standing issue that drives the applicability of the DTPA: is the transaction being challenged one that involves a consumer and goods and services. Put simply, the Attorney General, although not required to be a consumer himself,

element of any DTPA cause of action. *Mendoza v. American Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.—San Antonio 1996, no writ). *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 400–01 (Tex. App.—San Antonio 2000, no pet.). The courts have written reams of paper confirming this rule over the decades since the passage of the DTPA.

As noted above, "consumer" is an expressly defined term in the DTPA. *See* Tex. Bus. & Comm. Code § 17.45(4). Importantly, consumer is not defined to include a donor or a voter, but only those who seek or acquires goods or services. The cases in Texas have consistently ruled that a DTPA consumer is one who: (1) seeks or acquires goods or services by purchase or lease; and (2) the goods or services sought or acquired form the basis of his complaint. *Flores v. Star Cab Coop. Ass'n*, 2008 WL 3980762 (Tex. App.—Amarillo Aug. 28, 2008) (mem. op.) (citing *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987) and *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex. 1987)). This has been black letter Texas law for decades now. The threshold inquiry for a cause of action under the DTPA is whether the plaintiffs are "consumers" for purposes of the Act. *Doe v. Boys*

---

must be asserting a claim that is cognizable as a consumer injury. *See infra* at Section III.B.1.

*Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942, 952–53 (Tex. App.—Amarillo 1994), aff'd, 907 S.W.2d 472 (Tex. 1995) (citing *Flenniken v. Longview Bank And Trust Co.,* 661 S.W.2d 705, 706 (Tex. 1983)). Here, the Attorney General has not and cannot identify any actual "consumers" that qualify because no one is purchasing or acquiring any goods or services in any transaction challenged in the State's lawsuit.

A cursory examination of the State's allegations makes this apparent on its face. What are the allegedly deceptive acts plead in the Amended Petition? There are only arguably four (4) instances of alleged deceptive conduct and none involve any "consumers" as defined in the DTPA whatsoever.

First, the Office of the Attorney General alleges in paragraph 13 of its Amended Petition that:

> 13. Defendants promised Texas Democrats that if they broke quorum, Defendants would "have [their] back," would give them "an initial amount to get [them] off the ground," and would "fundraise" such that "everything that comes in goes toward that effort." Taylor Goldenstein, *Democrats who fled Texas are racking up a huge bill. Who is paying the tab?*, Hous. Chron. (Aug. 5, 2025), https://tinyurl.com/56uzbyve.

Even assuming this allegation is true, it does not establish any basis for a finding that a consumer is involved in any transaction. This allegation, at most, only asserts that (1) the Relators promised lawmakers they would provide them funds and (2) funds raised would go to help Texas Democrats.

28

It does not allege or even assert, nor could it, that a donor was seeking to acquire through a purchase or lease any good or service such that any individual donor could qualify as a "consumer" under the DTPA.

Second, the State alleges in paragraph 16 of its Amended Petition that:

> 16.    Meanwhile, at Defendants' fundraising rallies and in numerous media appearances, Mr. O'Rourke has urged consumers to text the word "fight" to "20377" in order to make political donations and "support these brave Texas Democrats," who, he claimed, the Governor was attempting to "replace" with "cronies" and "corrupt republicans."[3]

In this paragraph the State at least uses the word "consumer," but it does not allege why or explain how any political donor could be considered a "consumer" under the DTPA, which has a very specific definition. Again, the law in Texas is clear that a consumer must be seeking or acquiring through a purchase or lease some goods or services. Beyond the bare use of the word consumer, nothing in paragraph 16 establishes that any individual that did make a donation either sought or acquired a good or service through a purchase or a lease. Indeed, the allegation proves, on its face, the opposite. The solicitation as described in this paragraph is expressly a political donation that will be used to support Texas Democrats. That is neither false in any way

nor is it proof that any goods or services were sought, acquired, exchanged or otherwise purchased.

Third, the Attorney General alleges in paragraph 18 that:



18. When consumers follow Mr. O'Rourke's instructions, they receive a text message response that purports to be from Mr. O'Rourke containing the following misrepresentations.

19. The hyperlink then directs consumers to an ActBlue page for PBP, wherein consumers are prompted to make *political* donations.

Again, nothing in these text messages is false but, more importantly nothing even hints at the purchase, acquisition, or seeking of any good or service. These text messages are simply pleas for political donations, which definitionally have no expectation of returning value to the donor.

Fourth, and finally, the only other express allegation of a challenged transaction in the Amended Petition is found in paragraph 30, which states:

30. During this August 9th rally in Tarrant County, Texas, Defendants raised funds for non-political purposes, including to unlawfully fund out-of-state travel, hotel, and dining accommodations or services to the quorum breaking Texas Democratic legislators and to assist in funding the payment of fines provided under Texas House rules for unexcused legislative absences.

Defendants raised these funds in a confusing, misleading, and deceptive manner (and in violation of this Court's TRO) by raising these funds through the ActBlue platform.

This allegation also does not define or allege the existence of a consumer or a transaction that involves a DTPA consumer as the statute requires. The allegation incorrectly alleges that funds were raised in a misleading manner, but that is not the inquiry the Court must satisfy itself to determine if the DTPA applies. In Texas, a claim under the DTPA only exists if there is a transaction involving a consumer, which expressly requires the exchange to involve the purchase, acquisition or seeking of a good or service. Allegations of what Powered By People might do with donor funds, improperly or properly, do not answer the fundamental question of whether the donating individual that allegedly gave under deceptive pretenses was seeking or acquiring a good or a service. Reading the plain text of the statute alone and applying it here, it is clear that political donations are a one-way street and do not qualify as consumer transactions under the DTPA. No political donor has any damages or loss and did not acquire or seek to acquire a thing. *See also Brown & Brown of Tex., Inc. v. Omni Metals, Inc.,* 317 S.W.3d 361 (Tex.

31

App.—Houston [1st Dist.] 2010, pet. denied). ("Under the DTPA, a consumer may bring an action when he has relied to his detriment on a false or misleading representation, and the reliance is a producing cause of damages.").

### 3. The DTPA only regulates transactions involving "goods" or "services," not political donations or gifts.

A political donation is not a "purchase or sale of goods and services." To bring a cognizable claim under the DTPA a claimant must be purchasing or acquiring or seeking "goods" or "services." Here, the State only complains about deceptive acts as they relate to core political speech and political fundraising for donative contributions. There is no "good" or "service" at issue in the challenged transactions the State claims are deceptive.

The DTPA has explicit and clear definitions of these terms:

(1) "Goods" means tangible chattels or real property purchased or leased for use.

(2) "Services" means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods.

TEX. BUS. & COM. CODE ANN. § 17.45.

First, the DTPA's statutory text does not define either "goods" or "services" to include political contributions or donations. Because the Texas

32

Legislature is presumed to know how to craft laws for conduct it intends to regulate, the failure to include political contributions or donations as either a "good" or a "service" evinces a clear legislative intent to *not* regulate such political speech with the DTPA.

Second, the definitions of "goods" and "services" in the DTPA clearly do not under any reasonable interpretation or reading include political donations, or gifts of any kind for that matter. Political donations simply do not qualify as either a good or a service. No donor is obtaining or acquiring or seeking a tangible chattel or real property when they give money to Powered By People. No donor is purchasing or leasing a service, work, or labor when they give money to Powered By People. The donors allegedly confused or tricked by Relators' political advertisements seek nothing in return and receive nothing in return. Accordingly, the DTPA does not apply.

**B.** **The Office of the Attorney General can bring claims to restrain or enjoin under Section 17.47(a) *only* if the claims are cognizable under the DTPA.**

*1. The Office of the Attorney General is only authorized to bring claims under the DTPA for acts declared unlawful, which requires a deceptive act involving a good or service.*

The Attorney General has taken the position that it can bring an action for injunctive relief under the DTPA based on the act of alleged deceptive

solicitation of donations, solely relying on the language in Section 17.47(a).

Section 17.47(a), however, is not as broad as the State contends and does not remove the fundamental requirement that the challenged act must be "declared to be unlawful by this subchapter" of the DTPA. Section 17.47(a) reads:

> Whenever the consumer protection division has reason to believe that any person is engaging in, has engaged in, or is about ***to engage in any act or practice declared to be unlawful by this subchapter***, and that proceedings would be in the public interest, the division may bring an action in the name of the state against the person to restrain by temporary restraining order, temporary injunction, or permanent injunction the use of such method, act, or practice.

TEX. BUS. & COM. CODE ANN. § 17.47 (emphasis added). Section 17.47(a), thus, expressly tethers the Consumer Protection Division's authority and standing to only pursue a restraining action if the acts or practices challenged are declared to be "unlawful" in the DTPA.

To qualify as an act "declared to be unlawful" in the DTPA, there must be a viable claim for relief against a defendant for violating one of the "laundry list" of deceptive acts set forth in Section 17.46 of the Texas Business & Commerce Code. If the deceptive act identified in the "laundry list" is not applicable to the conduct being challenged, then self-evidently the act is not

34

"declared to be unlawful" under the DTPA. Here, the Attorney General has alleged one general and four specific "laundry list" deceptive acts to invoke the provisions of Section 17.47(a) and obtain a TRO against Relators. Specifically, the Attorney General only pleads the following provisions have been violated: Section 17.46(a), (b)(2), (b)(5), (b)(7) and (b)(24). None of these apply to political donations or political fundraising. All of these require a claimant for relief to either be a "consumer" and involve the sale or purchase of "goods" or "services." The State of Texas, however, is only complaining about political speech and solicitations, not any commercial transaction regulated under the DTPA.

First, Section 17.46(a) of the Texas Business & Commerce Code clearly is not a valid basis for the State to assert that an unlawful act under the DTPA occurred here. Though broad, the first type of deceptive practice declared unlawful under the DTPA does not cover or include political donations or speech. Section 17.46(a) states: "[f]alse, misleading, or deceptive acts or practices **in the conduct of any trade or commerce** are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code." (emphasis added). The acts regulated under this sub-section are only those that relate to "trade" or

"commerce," which are also expressly defined terms in the DTPA, and, again, the definitions do not include political speech, political advertisements, contributions or donations.

Section 17.45(6) defines "trade" and "commerce" as follows:

"Trade" and "commerce" mean the advertising, offering for sale, sale, lease, or distribution of *any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value*, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state.

TEX. BUS. & COM. CODE ANN. § 17.45 (emphasis added). The definition of "trade and commerce" under the DTPA expressly includes and incorporates "good" or "service" the definition. Thus, if the challenged transaction is not one that is advertising or offering for sale, lease, or distribution a good or service to a person, then the DTPA does not apply by its terms. This has been the law in Texas for two decades now. As the Supreme Court of Texas noted in *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 650 (Tex. 1996). "[w]hile our words have varied, the concept has been consistent: the defendant's deceptive trade act or practice **is not actionable under the DTPA unless it was committed in connection with the plaintiff's transaction in goods or services.**" (emphasis added). Here, the State has not and cannot establish

36

that any act alleged to be deceptive was made "in connection with" any person's "transaction in goods or services."

Second, the State's other alleged bases for deceptive acts fall within Section 17.46(b) of the Texas Business & Commerce Code. The State asserts, without any specific factual pleading to support the claim, that the 17.46(b)(2), (b)(5), (b)(7) and (b)(24) apply and render Relators' conduct deceptive. But even a cursory glance at those sub-sections makes it clear they are inapplicable on their face.

Section 17.46(b)(2) declares unlawful conduct that is "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of **goods or services**." TEX. BUS. & COMM. CODE § 17.46(b)(2) (emphasis added). This sub-section explicitly incorporates the statutorily defined terms "goods" and "services" to cabin the activity it is intended to regulate and declare unlawful. Again, political donations and political advertisements and solicitations for contributions are neither "goods" nor "services" under the plain text of the DTPA.

Section 17.46(b)(5) declares unlawful conduct that is "representing that **goods or services** have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a

37

person has a sponsorship, approval, status, affiliation, or connection which the person does not." Tᴇx. Bᴜs. & Cᴏᴍᴍ. Cᴏᴅᴇ § 17.46(b)(5) (emphasis added). This sub-section also only applies to representations about "goods" or "services." Here, the only representations the State complains about are solicitations for political donations alone, not a good or a service. *See* Am. Pet. at ¶¶ 13, 15, 18 and 30.

Section 17.46(b)(7) declares unlawful conduct that is "representing that **goods or services** are of a particular standard, quality, or grade, or that **goods** are of a particular style or model, if they are of another." Tᴇx. Bᴜs. & Cᴏᴍᴍ. Cᴏᴅᴇ § 17.46(b)(7) (emphasis added). This sub-section also only applies to representations about "goods" or "services" and, in particulare, the quality of the goods or services at issue. The State has identified no representations made by the Relators regarding the quality, standard, or grade of any good or service.

Section 17.46(b)(24) declares unlawful conduct that is "failing to disclose information concerning **goods or services** which was known at the time of the transaction if such failure to disclose such information was intended to induce the **consumer** into a transaction into which the **consumer** would not have entered had the information been disclosed." Tᴇx. Bᴜs. &

38

COMM. CODE § 17.46(b)(24) (emphasis added). Finally, this sub-section also only regulates omissions that were made to induce a consumer into a transaction concerning goods or services. This sub-section expressly incorporates the DTPA's definition of "consumer," "goods," and "services." Because the State cannot establish a consumer injury related to goods or services in connection with the political donations solicited, the provision is inapplicable.

> *2. Permitting the State to use civil injunction proceedings under the DTPA to prosecute allegedly deceptive political advertisement or political solicitation runs afoul of the Constitution and implicates significant due process concerns.*

**First,** reading the DTPA to police political fundraising would raise grave constitutional concerns. Decades of case law affirm that "the Constitution accords less protection to commercial speech than to other constitutionally safeguarded forms of expression." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64–65 (1983). On the other hand, ***political speech*** deserves the height of constitutional protection. The solicitations the State is trying to halt here—such as Mr. O'Rourke's statement that he was "still raising and rallying to stop the steal of 5 congressional seats in Texas," MR 0127—aptly illustrate how "solicitation is characteristically intertwined with informative and

perhaps persuasive speech." *Riley v. Nat'l Fed'n of the Blind,* 487 U.S. 781, 796 (1988) (quoting *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980)). For this reason, "prophylactic statutes designed to combat fraud by imposing prior restraints on solicitation" are typically struck down. *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). Texas courts must avoid construing state laws in a way that conflicts with constitutional mandates if any other reasonable construction exists. *Paxton v. Annunciation House, Inc.*, No. 24-0573, 2025 WL 1536224, at *24 (Tex. May 30, 2025).

**Second,** the State's position here would lead to absurd and unjust consequences, constituting a bold and brazen reimagining of the State's powers under the DTPA. The State seeks to bring this action by cobbling together a mix of provisions from other statutes including the Texas Elections Code and Texas Penal Code, as well as the Texas House Rules of Procedure, (which is not binding law). *See* MR 0204-07 (citing Texas Elections Code § 253.035, restricting use of political contributions for "personal use" that "primarily furthers individual or family purposes not connected with the performance of [official duties]"); Rule 5, Section 3 of the House Rules of Procedure (which is not a binding law, but sets rules around the permitted

40

forms of payment for House imposed fines); and Tex. Pen. Code § 36.08 (prohibiting members of the legislature from "solicit[ing], accept[ing], or agree[ing] to accept any benefit from any person" subject to a variety of exceptions laid out in Tex. Penal Code § 36.10).

The outcome of the State's position – that the Attorney General, and potentially any consumer, can sue an entity using the DTPA to allege a claim under another state law or rule – is nonsensical and an effort to go beyond the scope of the AG's power. The DTPA has a unique standard for a temporary injunction, and does not permit common law defenses. *See* DTPA § 17.47(a); *David Jason W. & Pydia, Inc. v. State*, 212 S.W.3d 513, 519 (Tex. App. 2006) (explaining the DTPA temporary injunction standard); *Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002) ("the DTPA was enacted …to provide consumers with a means to redress deceptive practices 'without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit.'") (quoting *Smith v. Baldwin*, 611 S.W.2d 611, 615 (Tex. 1980), citations omitted).

As such, to shoehorn other provisions as grounds for a case via the DTPA enforcement structure has the effect of an end-run around the laws of Texas. First, it expands the scope of the DTPA beyond what was intended and

is made clear in its plain language. Second, it expands the power of the Office of the Attorney General's Consumer Protection Division beyond its legal mandate and would permit it to evade the due process and statutory requirements of the other laws it is attempting to conflate into a DTPA action.

The plain language is clear and so it is not necessary to look to the legislature's intent, this surely cannot be what the legislature intended in passing the DTPA. When it passed the DTPA, the legislature almost certainly did not intend for it to become a vehicle for challenging other supposed procedural violations via a lessened injunction standard and a lack of common law defenses. This represents a brazen attempt to expand the power of the Office of the Attorney General, to expand the DTPA to the point of absurd overbreadth, and an end-run around the laws of Texas.

## IV. THE TRIAL COURT'S MODIFIED TEMPORARY ORDER VIOLATES THE TEXAS CONSTITUTION AND IT WAS AN ABUSE OF DISCRETION TO DENY THE RELATORS' MOTION TO DISSOLVE.

The TRO, the Modified TRO, and any similar temporary injunction are unconstitutional prior restraints. "A prior restraint on speech is an 'administrative and judicial order [] *forbidding* certain communications when issued in advance of the time that such communications occur." *Tex. Mut. Ins. Co. v. Sur. Bank, N.A.*, 156 S.W.3d 125, 128 (Tex. App.—Fort Worth

2005, no pet.) (quoting *Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993)). "Injunctions are inherently prior restraints because they prevent future speech." *See Kinney v. Barnes*, 443 S.W.3d 87, 93 (Tex. 2014) (quoting Erwin Chemerinsky, *Injunctions in Defamation Cases,* 57 Syracuse L.Rev. 157, 165 (2007)).

Here, there is no question that the TRO and Modified TRO—and any similar temporary injunction—seek to "prevent future speech." *See id.* They restrict Relators' fundraising efforts and the use of Relators' political funds for their intended political purposes. To the extent the TRO is only read to prohibit unlawful uses of funds, it is neither necessary (because existing laws proscribe such conduct) and also inconsistent with the State's own interpretation of the TRO given its efforts to seek contempt and modify the TRO. As discussed below, all activity at issue is core political speech; the TRO and Modified TRO—and any similar temporary injunction—therefore are prior restraints.

It is "well settled that prior restraints are rarely permitted in Texas due to their capacity to chill protected speech." *Kinney v. Barnes*, 443 S.W.3d 87, 89 (Tex. 2014). Indeed, the Supreme Court of Texas has long emphasized that "prior restraints bear a heavy presumption against their

43

constitutionality." *See id.* at 94 (citing *Davenport v. Garcia,* 834 S.W.2d 4, 9 (Tex.1992)). "The proponent of such restraints thus 'carries a heavy burden of showing justification for the imposition of such a restraint.'" *Id.* (quoting *Org. for a Better Austin v. Keefe,* 402 U.S. 415, 419 (1971)).

That all flows directly from article I, section 8 of the Texas Constitution, which provides: "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." Tex. Const. art. I, § 8. "Enshrined in Texas law since 1836, this fundamental right recognizes the transcendent importance of such freedom to the search for truth, the maintenance of democratic institutions, and the happiness of individual men." *Kinney v. Barnes*, 443 S.W.3d 87, 90 (Tex. 2014) (quotation omitted). To that end, the Supreme Court of Texas has repeatedly emphasized that any "abuse of the privilege" of free speech "is not to be remedied by denial of the right to speak, but only by appropriate penalties for what is wrongfully spoken." *See id.* at 92 (Tex. 2014) (quoting *Ex parte Tucker*, 110 Tex. 335, 220 S.W. 75, 75 (1920)). "Punishment for the abuse of the right, not prevention of its exercise, is what the provision contemplates."

*Ex parte Tucker,* 220 S.W. at 76 ("[T]he abuse of the privilege, [Article I, Section 8] commands, shall be dealt with in no other way.").

In line with this bedrock constitutional protection, Article I, Section 8 permits a prior restraint only when two conditions are met. *First,* a prior restraint is permissible "only when essential to the avoidance of an impending danger," *Kinney,* 443 S.W.3d at 95 (quoting *Davenport,* 834 S.W.2d at 9). "The mandate that findings of irreparable harm be made is based on our state constitutional preference for post-speech remedies." *Davenport,* 834 S.W.2d at 10; *Kinney,* 443 S.W.3d at 99. "Only when no such meaningful remedies exist will prior restraints be tolerated in this context." *See Davenport,* 834 S.W.2d at 10. *Second,* a prior restraint may issue "only when it is the least restrictive means of preventing that harm." *Kinney,* 443 S.W.3d at 95 (citing *Ex parte Tucci,* 859 S.W.2d 1, 6 (Tex. 1993)). "Unless such a restriction is *proved* to be the least restrictive means of guarding against an irreparable and imminent injury, it is an impermissible infringement on our state constitutional right of free expression." *Ex parte Tucci,* 859 S.W.2d at 6 (emphasis added). "A least restrictive means requirement ensures that, when a variety of methods are available to prevent harm, our constitution commands the use of that approach which is least intrusive to individual

45

liberties." *Id.* "Unless alternative methods of protecting against harm are considered, courts cannot evaluate whether the means selected are narrowly directed to that objective." *Id.* at 8.

"[A] prior restraint will withstand scrutiny under this test only under the most extraordinary circumstances." *Davenport*, 834 S.W.2d at 10. "In resolving both whether the alleged effect was imminent and irreparable and whether the temporary injunctive relief" sought is "the least restrictive means to prevent that harm," courts "look to the injury asserted, the relief requested, and the underlying evidence." *Ex parte Tucci,* 859 S.W.2d at 6. In considering these factors and "[r]elying upon this fundamental state guarantee" of free speech, "our courts have repeatedly rejected both legislative and judicial attempts to restrict expression." *Ex parte Tucci*, 859 S.W.2d at 5 (holding that 100-foot speech-free zone required by TRO was unconstitutional); *Kinney*, 443 S.W.3d at 94 (holding "that the Texas Constitution does not permit injunctions against future speech following an adjudication of defamation"); *Burbage v. Burbage,* 447 S.W.3d 249, 263 (Tex. 2014) (holding part of injunction forbidding "publishing, disseminating or causing to be published or disseminated, . . . to third-parties by any means, . . . any statement or representation that states, implies or suggests in whole or part" any of four

46

pages of forbidden topics was unconstitutional); *Star-Telegram, Inc. v. Walker*, 834 S.W.2d 54, 55 (Tex. 1992) (granting mandamus relief trial court issued "a protective order to prohibit a newspaper from publishing information already disclosed in open court and made part of a trial court's public record"); *Davenport,* 834 S.W.2d at 9 (granting mandamus petition in part and holding that trial court's gag order barring "all discussion of the . . . case outside the courtroom" was unconstitutional); *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983) (holding that a temporary injunction prohibiting allegedly defamatory speech is an unconstitutional prior restraint); *Ex parte Tucker,* 220 S.W. at 76 (granting habeas for injunction prohibiting union members from "vilifying, abusing, or using ... epithets" against the employees of a particular company); *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 926 (Tex. App.—Dallas 2006, no pet.) (holding that injunction prohibiting "making false and disparaging statements to resellers regarding [plaintiff's] ability to sell its own product" was unconstitutional); *Tex. Mut. Ins. Co. v. Sur. Bank, N.A.*, 156 S.W.3d 125, 131 (Tex. App.—Fort Worth 2005, no pet.) (holding that temporary injunction provision prohibiting "communicating or implying to any insurance agent or broker or any business known to be a customer or

potential customer of [plaintiff]" "that [plaintiff] is in some sort of financial trouble or . . . has committed a misfeasance or malfeasance or was somehow unfit or unable to finance insurance premiums" was unconstitutional); *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 114 (Tex. App.—Austin 2003, no pet.) (holding that provision of temporary injunction prohibiting "directly or indirectly slandering or defaming Plaintiff in any way, or from directly or indirectly disparaging Plaintiff's business" was unconstitutional).

This Respondent, however, utterly failed to avoid imposing an unconstitutional prior restraint on Relators. *First*, the State presented "absolutely no testimony or any other type of evidence to support allegations of imminent and irreparable harm." *Markel v. World Flight, Inc.*, 938 S.W.2d 74, 79 (Tex. App.—San Antonio 1996, no writ) (Green, J.). "Pleadings alone will not support the entry of a temporary injunction," *id.* (citing *Millwrights Local Union No. 2484 v. Rust Engineering Co.,* 433 S.W.2d 683 (Tex. 1968)), and "[t]his is particularly true where the petition requesting injunctive relief fails to plead detailed facts about the alleged harm" as "general or conclusory allegations are insufficient to serve as a basis for injunctive relief," *id.* Indeed, "[i]t is well-established that when free speech values are at stake, states must supply rationales that are far stronger than mere speculation about serious

48

harms." *Ex parte Stafford*, 667 S.W.3d 517, 526 (Tex. App.—Dallas 2023), *aff'd*, No. PD-0310-23, 2024 WL 4031614 (Tex. Crim. App. Sept. 4, 2024). Indeed, "the State must specifically identify an actual problem in need of solving." *Id.* (quotation omitted). Here, the State's pleadings only point to legitimate political fundraising efforts or traditional political solicitations and motivational statements. MR 0198-213. They have offered not a single piece of evidence that a law was violated or even that a qualifying DTPA consumer transaction has occurred.

But "even if there" is "testimony consistent with [the] pleadings, it would not" entitle the State to "injunctive relief." *Markel v. World Flight, Inc.*, 938 S.W.2d 74, 79 (Tex. App.—San Antonio 1996, no writ). That is because "[t]he testimony of 'fear,' 'apprehension,' and 'possibilities' is not sufficient to establish an injury, let alone 'irreparable injury.'" *Mother & Unborn Baby Care of N. Tex., Inc. v. Doe*, 689 S.W.2d 336, 338 (Tex. App.—Fort Worth 1985, writ dism'd) (quoting *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983)). "Moreover, 'an injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural.'" *Markel v. World Flight, Inc.*, 938 S.W.2d 74, 79 (Tex. App.—San Antonio 1996, no writ) (quoting *Mother &*

*Unborn Baby Care of N. Tex., Inc. v. Doe*, 689 S.W.2d 336, 338 (Tex. App.—Fort Worth 1985, writ dism'd)). Here, the State's expressed need for emergency relief was premised on political solicitations aimed to support Texas Democratic lawmakers that were engaged in their own act of expressive speech in breaking quorum to halt an unconstitutional redistricting effort. But the lawmakers are back, a quorum was established, and the Legislature did, indeed, pass the unconstitutional redistricting map. Thus, any imminent need to stop fundraising that ostensibly was to support out-of-state Texas Democratic lawmakers is already over.

The State thus has not shown, and cannot show, *any* harm—much less an *imminent and irreparable* harm. *See Ex parte Tucci*, 859 S.W.2d 1, 6 (Tex. 1993); *see also Kinney*, 443 S.W.3d at 95; *Tex. Mut. Ins. Co. v. Sur. Bank, N.A.*, 156 S.W.3d at 129 .

*Second*, and in any event, "[f]reedom of expression may not be restricted solely on grounds that its exercise will have the effect of producing imminent and irreparable harm." *Ex parte Tucci*, 859 S.W.2d at 6. Instead, a prior restraint also requires showing that it "is the least restrictive means of preventing that harm," and the State does not try to—and indeed, cannot—meet that burden. *See Kinney*, 443 S.W.3d at 95. "[A]dministrative

50

convenience" cannot outweigh "the safeguards of the constitution where were intended by our fathers for the preservation of the rights and liberties of the citizen," and the State has failed to "offer[] specific evidence justifying" its particular proposed restrictions. *Ex parte Tucci*, 859 S.W.2d at 6; *see also id.* at 7 ("Every such restriction must, however, be justified by a proper evidentiary showing[.]"). Further, "[a] least restrictive means requirement ensures that, when a variety of methods are available to prevent harm, our constitution commands the use of that approach which is least intrusive as to individual liberties." *Id.* at 7). And that requires that "alternative methods of protecting against harm are considered." *Id.* at 8. But here, the State makes no attempt to show how "our state constitution preference for post-speech remedies" is insufficient here. *Davenport*, 834 S.W.2d at 10; *Kinney*, 443 S.W.3d at 99. Nor could the State do so. *Cf. Kinney*, 443 S.W.3d at 99 ("And imposition of damages has long been held to be an effective tool against defamers."); *cf. also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964) ("The fear of damage awards . . . may be markedly more inhibiting than the fear of prosecution under a criminal statute.")

Further, "[i]n examining the propriety of injunctive relief," courts must also "bear in mind the category of speech sought to be enjoined and the effect

51

of such relief on a person's liberty to speak freely." *Kinney*, 443 S.W.3d at 94. And "[c]onsistent with this jurisprudence and the history of our state constitution," the Supreme Court of Texas has held "that restrictions must be targeted at the *effect of expression* rather than the expression itself." *Ex parte Tucci*, 859 S.W.2d at 5 (emphasis added). "In evaluating whether state action exceeds constitutional bounds governing freedom of speech, courts 'must give the benefit of any doubt to protecting rather than stifling speech.'" *Kinney*, 443 S.W.3d at 101 (quoting *Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 469 (2007)).

Here, the Modified TRO and any temporary injunction target Relators' core political speech itself, as it aims at the solicitations of funds, the utilization of political fundraising, and—as evidenced by the State's enforcement efforts—Relators' statements on matters of public concern. *See Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011); *Cath. Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 424-25 (5th Cir. 2014); *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 108 (Tex. App.—Austin 2003, no pet.) (unconstitutional prior restraint where enjoined individuals "spoke as members of a group advocating legislation to protect

52

buyers of new homes from unscrupulous homebuilders, which arguably is an issue of public concern").

"At the very core of" free speech protections "lies political expression." *In re Hotze*, 682 S.W.3d 877, 880 (Tex. 2023) (Devine, J., dissenting). The U.S. Supreme Court "has recognized that speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Ex parte Stafford*, No. PD-0310-23, 2024 WL 4031614, at *2 (Tex. Crim. App. Sept. 4, 2024) (citing *Buckley v. Valeo*, 424 U.S. 1, 14-15 (1976)). Indeed, "[d]iscussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." *Buckley*, 424 U.S. at 14-15. Given the chilling effect Relators have experienced and will continue to experience around their core political speech, MR 0050-52, a prior restraint would be especially constitutionally suspect. *Kinney*, 443 S.W.3d at 94.

Accordingly, the TRO and Modified TRO, and any similar temporary injunction constitute an unconstitutional prior restraint in violation of Article I, Section 8 of the Constitution.[3] The Respondent clearly abused its discretion

---

[3] Relators maintain that Article I, Section 8 provides broader protections against prior restraints to core political speech than the First Amendment provides. *See Ex parte Tucci*, 859 S.W.2d 1, 21–22 (Tex. 1993); *Davenport v. Garcia*, 834 S.W.2d 4,

in refusing to properly apply these foundational constitutional protections and rights.

## V. THE TRO IS IMPERMISSIBLY OVERBROAD BY RESTRAINING BY GRANTING GREATER RELIEF THAN THE MOVANT IS ENTITLED TO AND BY RESTRICTING LAWFUL CONDUCT.

The TRO is an abuse of discretion because it is overbroad. It is well-established that "injunctions must be narrowly drawn and precise." *Holubec v. Brandenberger,* 111 S.W.3d 32, 40 (Tex. 2003). An injunction cannot "be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights." *Id.* (citing *Villalobos v. Holguin*, 208 S.W.2d 871, 875 (1948)). Additionally, "[a]n injunction is overbroad when it grants relief far beyond what the evidence supports, including relief the [movant] never sought." *Huynh v. Blanchard,* 694 S.W.3d 648, 705 (Tex. 2024) (Huddle, J., concurring); *see also, e.g., Holubec*, 111 S.W.3d at 40 (stating that in general an injunction "must not grant relief which is not prayed for . . . ."). Here, the

---

8 (Tex. 1992); *but see Kinney v. Barnes*, 443 S.W.3d 87, 92 (Tex. 2014). But even if the protections were the same, that would not change the outcome that the Modified TRO and temporary injunction are unconstitutional prior restraints in violation of Article I, Section 8 of the Texas Constitutionfor the same reasons described herein. *See Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 493-96 (5th Cir. 2013).

injunction is overbroad both because it grants relief never sought and because it enjoins lawful activity.

First, the challenged TRO is overbroad because it grants "relief the [State] never sought." *Huynh*, 694 S.W.3d at 705 (Huddle, J., concurring). In both its original and its amended petition, the Attorney General seeks "[t]emporary and permanent injunctive relief prohibiting Defendant PBP from removing any property or funds from the State of Texas during the pendency of this lawsuit." MR 0211. This form of relief is sought *only* as to Defendant PBP. However, this relief in both the original and the modified TRO are not limited to PBP, but rather extend to Mr. O'Rourke, who is sued in both his individual and official capacities. The modified TRO orders that:

> any filing entity or foreign filing entity in active concert or participation with Defendant Powered by People and/or Defendant O'Rourke (including banks, financial institutions, and ActBlue), are immediately restrained from removing any property or funds that belong to, or are being held for, Defendant Powered by People and/or Defendant O'Rourke, from the State of Texas during the pendency of this lawsuit.

MR.0393. This requested relief was never sought by the Attorney General, nor is it justified by any facts alleged. Indeed, the petition does not contain a single allegation that Mr. O'Rourke ever acted in anything but an official

capacity for Powered by People. Therefore this restraint is not supported by the pleadings or evidence.

Second, the TRO restrains lawful conduct. Even if one were to accept the absurd premise that Powered by People and Mr. O'Rourke's political speech could be restrained under the DTPA, the TRO goes far beyond the complained-of speech. It extends to "[r]aising funds for non-political purposes." MR.0391-0394. "Non-political purposes" might include any number of activities which have nothing to do with the State's complaints, such as raising money for non-political charitable purposes, including food bank donations, which is one of Powered by People's public activities. MR.0264. Such a vague and wide-ranging restraint is an abuse of discretion on its face.

## VI. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING RELATORS' EMERGENCY MOTION TO TRANSFER VENUE

"Mandamus relief is available to enforce mandatory venue provisions in civil cases." *In re Sanofi-Aventis U.S., LLC*, 711 S.W.3d 732, 735 (Tex. App— 15th Dist. 2025).

### A. The State of Texas offered no evidence and alleged no actual facts establishing venue in Tarrant County against Relators

The Relators both specifically denied the State's venue "facts" found in the Original Petition and submitted sworn declarations establishing the conclusory allegations alleged in the Petition were untrue. MR.0029-0111; MR.0050-0052; MR.0252. The Court may only take the State's allegations as true when "properly pleaded" and only if not "specifically denied by the adverse party." Tex. R. Civ. P. 87(3)(a). As this Court has expressly noted: "An improperly pleaded claim, i.e. one that is not viable on its face, will not support venue in a particular county. *In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007) (concluding venue not proper in Travis County when plaintiff failed to plead viable negligent activity claim)." *In re Sanofi-Aventis U.S., LLC*, 711 S.W.3d at 738 n.5.

Here, the State relied exclusively on its pleadings, which only conclusorily allege that (a) the "transactions occurred in Tarrant County"; and (b) the Relators "had done business in Tarrant County." MR.003. But these are neither properly plead allegations of facts nor are they sufficient to establish a prima facie case under the DTPA that any goods or services were sold or acquired by consumers in Tarrant County. *See State of Texas v. Life Partners*, 243 S.W.3d 236, 240-41 (Tex. App.—Waco 2007) ("[A] single transaction is insufficient to establish venue if it "does not relate to the facts

57

upon which the plaintiff's cause of action is based." *FDI Inv. Corp. v. S.S.G. Invs.,* 663 S.W.2d 135, 138 (Tex. Civ. App.—Fort Worth 1983, no writ); *see Legal Sec. Life Ins. Co. v. Trevino,* 605 S.W.2d 857 (Tex. 1980)). Relators, however, presented proper affidavit evidence that established that they were only residents of El Paso County (not Tarrant), did not engage in any consumer transactions for goods and services in Tarrant County, and only engaged in protected political speech in a single rally on August 9, 2025 in Tarrant County. The State neither established that permissive venue under the DTPA was proper nor did it rebut the Relators' evidence that the Relators resided in El Paso County and, thus, a suit seeking to restrain them must be brought in a court of their county of residence. The only pleadings of representations or statements made that the State claims were deceptive were not made in or connected with Tarrant County, thus, the State did not meet its burden to establish venue, but the Relators did establish facts sufficient to require transfer.

### B. Venue is mandatory in El Paso County because the primary purpose of the State of Texas's suit is to restrain and enjoin the Relators.

Venue is mandatory in El Paso County, Texas because the primary purpose of the Attorney General's lawsuit is to seek injunctive relief. Section

58

65.023 of the Texas Civil Practice and Remedies Code requires that a "writ of injunction against a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled." "The statute placing venue for injunction suits in the county of the defendant's domicile is mandatory." *In re Continental Airlines, Inc.*, 988 S.W. 733, 736 (Tex. 1988). The application of a mandatory venue statute controls over permissive venue statutes. *See In re Texas Dept. of Transp.*, 218 S.W.3d 74, 76 (Tex. 2007) ("Section 15.016 provides that if an action is governed by a separate mandatory venue provision, then the action shall be brought in the county required by the separate venue provision."); *see also Hart*, 917 S.W.2d at 783 (Tex. 1996) (holding that where statutory venue provision said "may" and Civil Practice and Remedies Code provision said "shall," the mandatory "shall" provision prevailed).

To determine if a lawsuit "constitutes a suit for permanent injunction for the purpose of determining proper venue, [the courts] only look to the express relief sought in the allegations and prayer of the plaintiff's petition. When those pleadings show that the issuance of a permanent injunction is the primary and principal relief sought in the lawsuit, venue is mandatory in

the county of the defendant's domicile." *In re City of Dallas*, 977 S.W.2d 79, 803 (Tex. App.—Fort Worth 1998, orig. proceeding).

Here, it is undisputed that Relators are both domiciled in El Paso County, which would make venue of any permanent injunctive relief suit against them mandatory in El Paso. The State of Texas's Original Petition is primarily a request for injunctive relief. The State of Texas asserts one cause of action – violation of the DTPA – and seeks primarily temporary and permanent injunctive relief in its Prayer for Relief. Indeed, the first four sub-paragraphs of the Prayer exclusively request injunctive relief, *see* MR.0012(Orig. Pet.), and, at the TRO hearing, the State ignored the DTPA's otherwise mandatory seven day notice requirement by invoking its primary alleged concern that injunctive relief was needed to prevent irreparable harm.

The State argued—and the trial court apparently was persuaded to agree—that venue is proper in Tarrant County under section 17.47(b) of the DTPA. That section provides that an action "*may* be commenced in the district court of the county in which the person against whom it is brought resides, has his principal place of business, has done business or in the district court of the county where the transaction occurred, or, on the consent of the parties, in a district court of Travis County." TEX. BUS. & COM. CODE § 17.47(b)

60

(emphasis added). But Respondent's apparent decision that the permissive terms of section 17.47 need not give way to the mandatory injunction venue statute is contrary to law and an abuse of discretion.

The venue provision found in section 17.47(b) is a permissive venue provision. It provides that an action "may be commenced" in one of multiple venues. TEX. BUS. & COM. CODE § 17.47(b) (emphasis added).

### 1. *The Legislature's use of the word "may" denotes permissive venue.*

The Legislature's use of the word "may" in a venue statute has been held repeatedly to indicate permissive venue. *See, e.g., Wichita County, Tex. v. Hart*, 917 S.W.2d 779, 781-82 (Tex. 1996) ("The Legislature's use of the permissive term 'may' in the Whistleblower Act's venue provision, in light of its contemporaneous reorganization of the venue statute, strongly suggests that the Act's venue provision is permissive."); *In re Tarrant County*, 345 S.W.3d 784, 785 (Tex. App.—Dallas 2011, orig. proceeding) ("[T]he Whistle-blower Act's venue provision still refers to counties in which an employee or former employee 'may' sue, indicating permissive venue."); *Whitson v. Harris*, 682 S.W.2d 423, 425 (Tex. App.—Amarillo 1984, no writ) ("[T]he Whitsons relied on the venue provisions of Section 17.56 of the DTPA, which section is

couched in "may be commenced" language that, as they candidly concede, has been construed to be a purely permissive venue provision.").

The Legislature reorganized the general venue statute into five categories in 1983, including "Mandatory Venue" and "Permissive Venue" sections. *See Wichita County*, 917 S.W.2d at 781. The "Mandatory Venue" section included seven provisions, each stating where a suit "shall be brought." *Id.* "The Legislature also placed ten provisions within the 'Permissive Venue' subchapter in 1983, each stating where a suit 'may be brought.'" *Id.* This reorganization reflects the Legislature's intent to distinguish between "may" and "shall" in venue statutes. *Id.* Furthermore, the Code Construction Act provides that the word "may" creates discretionary authority or grants permission, while the word "shall" imposes a duty,"unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute." TEX. GOV'T CODE § 311.016 (Vernon 2005). Neither of the exceptions applies to section 17.47(b). There is nothing in the context of section 17.47 (or the DTPA) that necessarily requires that the words "may be commenced" must be construed to mean "shall be commenced in one of the following counties in the sole discretion of the State."

> *2. The Legislature knows how to create a mandatory venue provision and the Legislature's decision to enact a permissive DTPA venue scheme should be respected.*

Even if section 17.47(b) of the DTPA is a special venue provision, that does not make it mandatory. *See Wichita County v. Hart*, 892 S.W.2d 912, 919 (Tex. App.—Austin 1994), *rev'd on other grounds*, 917 S.W.2d 779 (Tex. 1996). "Sections of the venue statute in the Civil Practice and Remedies Code incorporating special venue provisions appear under both the headings 'Mandatory Venue' and 'Permissive Venue.'" *Id.* Thus, the Legislature's decision to include a special venue provision within the DTPA says nothing at all about whether that venue provision is permissive or mandatory. However, the Legislature's decision to use the permissive words "may be commenced" unambiguously demonstrates the permissive nature of the DTPA venue provision. The Legislature certainly knows how to draft a mandatory venue provision when it so chooses. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.011-15.039; TEX GOV'T CODE ANN. § 311.016. In crafting the DTPA, the Legislature chose to create a permissive venue scheme.

Section 17.56 of the Business and Commerce Code—within the same subchapter of the DTPA as section 17.47—also speaks of where an "action brought under this subchapter may be brought . . . ." TEX. BUS. & COM. CODE §

17.56 (Vernon 2011) (emphasis added). This DTPA venue provision has been repeatedly recognized to be a permissive venue statute. *E.g., In re Morice*, No. 01–11–00541–CV, 2011 WL 4101141, *2 (Tex. App.—Houston [1st Dist.] Sept. 15, 2011, orig. proceeding); *Tex. Specialty Trailers, Inc. v. Jackson & Simmen Drilling Co.*, No. 2-07-228-CV, 2009 WL 2462530, *5 (Tex. App.—Fort Worth Aug. 13, 2009, pet. denied);*Whitson v. Harris*, 682 S.W.2d at 425, *Portland Sav. & Loan Ass'n v. Bevill, Bresler & Schulman Gov't Secs., Inc.*, 619 S.W.2d 241, 246 (Tex. Civ. App.—Corpus Christi 1981, no writ). Section 17.47(b) uses the same permissive language as section 17.56. In these circumstances, there can be no basis for interpreting the words "may be commenced" in section 17.47(b) differently than the words "may be brought" in section 17.56. The words are indistinguishable and they appear in special venue provisions within the same DTPA subchapter of the Business and Commerce Code.

Furthermore, the Legislature is presumed to know of the courts' interpretation of section 17.56 as a permissive venue statute. *F.F.P. Operating Partners, L.P. v. Dueney*, 237 S.W.3d 680, 692 (Tex. 2007). "The Legislature must be regarded as intending statutes, when repeatedly reenacted, as is the case here, to be given that interpretation which has been settled by the

courts." *Id.* (quoting *Wich v. Fleming*, 652 S.W.2d 353, 355 (Tex. 1983) and *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex. 1968)). The Legislature has never revised the permissive language of either DTPA venue provision, and there is no reason to interpret section 17.47(b) as anything other than the permissive venue provision its language describes. The district court's conclusion to the contrary when it denied the motion to transfer venue violates the Legislature's carefully crafted venue plan established in chapter 15 of the Civil Practice and Remedies Code. Venue is a creature of statute. *Polaris Inv. Mgmt. Corp. v. Abascal*, 892 S.W.2d 860, 862 (Tex. 1995) ("Venue is a creature of legislative grace. . . ."). In its prerogative, the Legislature has determined that mandatory venue provisions control over permissive venue provisions—wherever those permissive venue provisions may be found. *See* TEX. CIV. PRAC. & REM. CODE §§ 15.001(b), 15.016, 15.038. The trial court was not free to disregard the Legislature's venue rules.

Section 15.001 of the Civil Practice and Remedies Code defines "proper venue" to mean: (1) the venue required by a mandatory venue provision set out in chapter 15 or another mandatory venue statute; or (2) if there is no applicable mandatory venue provision, then in a county of permissive venue. TEX. CIV. PRAC. & REM. CODE § 15.001(b). Likewise, section 15.016 provides

65

that "[a]n action governed by any other statute prescribing mandatory venue shall be brought in the county required." TEX. CIV. PRAC. & REM. CODE § 15.016; *see In re Texas Dept. of Transp.*, 218 S.W.3d 74, 76 (Tex. 2007) ("Section 15.016 provides that if an action is governed by a separate mandatory venue provision, then the action shall be brought in the county required by the separate venue provision."). Thus, the Legislature has determined that a permissive venue provision must always yield to a mandatory venue provision. For this reason, as this Court has explained: "If the plaintiff's chosen venue rests on a permissive venue statute and the defendant files a meritorious motion to transfer based on a mandatory venue provision, the trial court must grant the motion." *Wichita County v. Hart*, 917 S.W.2d at 781. A "permissive statute applicable to actions of a particular kind must always yield to a mandatory provision . . . ." *Langdeau v. Burke Inv. Co.*, 163 Tex. 526, 529, 358 S.W.2d 553, 556 (1962).

If there is a conflict between the mandatory injunction venue statute in section 65.023(a) of the Civil Practice and Remedies Code and the permissive venue provision in section 17.47(b) of the Business and Commerce Code, the mandatory provision of section 65.023(a) controls over the permissive provision of 17.47(b)—not the other way around. *Wichita County v. Hart*, 917

S.W.2d at 781; *Langdeau v. Burke Inv. Co.*, 358 S.W.2d at 556. "Mandatory [venue] provisions trump permissive ones." *Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 677 (Tex. App.—Austin 2003, no pet.). If a "mandatory provision applies but it is in conflict with a permissive rule, the mandatory provision controls." *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 242 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.); *see also In re County of Galveston*, 211 S.W.3d 879, 882 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) ("mandatory venue provisions control over permissive venue provisions"). Consequently, the trial court's decision that 17.47(b) is not superseded by any other venue provision is contrary to established Texas law and is an abuse of discretion. Respondent interpreted the law backwards. "The trial court has no discretion in determining the legal principles controlling its ruling or in applying the law to the facts." *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999). Even in an unsettled area of law, the trial court has no discretion to make an erroneous legal conclusion. *Id.* The reviewing court therefore focuses on whether the trial court failed to analyze or apply the law correctly when it refused to transfer the case to the Relators' chosen venue. *Id.; In re Texas Ass'n of School Bds., Inc.*, 169 S.W.3d 653, 656 (Tex. 2005). The venue provision in section 17.47(b) is a permissive

venue provision. As such, it "must always yield to a mandatory provision." *Langdeau*, 358 S.W.2d at 556.

## VII. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING RELATORS' MOTION FOR EXPEDITED RECIPROCAL DISCOVERY

The primary objective of discovery is to ensure that lawsuits are "decided by what the facts reveal, not by what facts are concealed." *In re Ten Hagen Excavating, Inc.*, 435 S.W.3d 859 (Tex. App.—Dallas 2014); *In re Alford Chevrolet-Geo*, 997 S.W.2d 173 (Tex. 1999, orig. proceeding). The Texas Supreme Court has held that the denial of discovery may be subject to mandamus when the denial precludes the ability of an adequate remedy on appeal when (1) the discovery denied goes to the very heart of a claim or defense and (2) when the discovery denied cannot be made part of **the** appellate record:

> An appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised . . . . [A] denial of discovery going to the heart of a party's case may render the appellate remedy inadequate. . . remedy by appeal may be inadequate where the trial court disallows discovery and the missing discovery cannot be made part of the appellate record, or the trial court after proper request refuses to make it part of the record . . .

*Walker*, 827 S.W.2d at 843-844 (emphasis added). If the Court determines that the trial court has jurisdiction and is the proper venue, then mandamus

68

should issue to at least permit Relators to prepare for a temporary injunction hearing. The denial of *any* expedited discovery to either test the State's claims or prepare a defense is an absolute abuse of discretion.

On August 18, 2025, the Court granted the State's request for expedited discovery, which requires two depositions of the Relators and the production of voluminous documents on short notice. MR 0929-30. On August 20, 2025, the Relators filed an Emergency Expedited Motion for Reciprocal Discovery. MR 0449-55. The Motion sought limited discovery and attempted to closely mirror the State's requested discovery: a limited, two-hour, corporate representative deposition of the Office of the Attorney General and the production of documents that form the basis for the filing of the State's claim. MR.0451-0453. The trial court set summarily denied the request at a hearing on August 25, 2025, and has precluded the Relators from receiving any discovery at all to prepare for a temporary injunction hearing on September 2, 2025. MR.0981.

The blatant disregard for simple fundamental fairness and ignorance of the primary purpose of discovery to avoid a trial by ambush justifies mandamus relief. The Court should order the Respondent vacate its discovery denial order and permit limited discovery before any temporary injunction

69

hearing, including resetting the hearing to provide appropriate time for discovery if necessary.

## VIII. THE TRIAL COURT ABUSED ITS DISCRETION IN ENTERING AN ANTI-SUIT INJUNCTION AGAINST ACTIONS TAKEN BY A SISTER COURT

Today, the trial court entered an anti-suit Temporary Restraining Order that purports to enjoin Powered by People from "[i]nitiating, filing, or prosecuting any suit, claim, or proceeding that seeks to restrain or enjoin the State from initiating, filing, or prosecuting the quo warranto claims alleged by the State in this proceeding." That extraordinary injunction attempts to restrain actions a sister court already has taken. "[A]n anti-suit injunction is a remedy to be employed sparingly and carefully and only in the most compelling circumstances when clear equity demands it." *Wyrick v. Bus. Bank of Texas, N.A.*, 577 S.W.3d 336, 356 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (internal quotation marks and citations omitted). Anti-suit injunctions require an "irreparable miscarriage of justice," *Golden Rule Ins. Co.* 925 S.W.2d at 652, because, "[i]f the [movant] has an adequate remedy at law, by appeal or otherwise, injunction is not warranted." *City of Houston v. Kunze*, 258 S.W.2d 226, 228 (Tex. Civ. App.—Fort Worth 1953), *aff'd*, 262

S.W.2d 947 (1953) (internal citations and quotation marks omitted). The TRO is an abuse of discretion for at least four independent reasons.

First, the State failed to identify any "irreparable miscarriage of justice," *Golden Rule Ins. Co.* 925 S.W.2d at 652, that could support its anti-suit injunction of a pending proceeding. The state identified only one alleged possible harm: "hemorrhaging taxpayer dollars on duplicative litigation." MR.0458-0824. The State's litigation expenses are by definition *reparable* because they are "capable of exact calculation" and "can be adequately cured." *Ballenger v. Ballenger*, 694 S.W.2d 72, 77 (Tex. App.—Corpus Christi 1985, no writ); *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651-52 (Tex. 1996) (holding that even "the added inconvenience and expense which are common to and largely inevitable in, situations involving a single parallel lawsuit" do not constitute an "irreparable miscarriage of justice" so as to justify anti-suit injunction.) The Uniform Declaratory Judgment Act, which forms a basis for the El Paso suit, permits attorney's fees. Tex. Civ. Prac. & Rem. Code § 37.009; *see also, e.g., Lakeway Psychiatry & Behav. Health, PLLC v. Brite*, 656 S.W.3d 621, 636 (Tex. App.—El Paso 2022, no pet.) (upholding award of attorney's fees to Defendant in a DTPA action).

71

Second, Texas law mandates venue for anti-suit stays: "Actions to stay proceedings in a suit shall be brought in the county in which the suit is pending."Tex. Civ. Prac. & Rem. Code Ann. § 15.012. The State seeks to stay proceedings in El Paso County (including an existing TRO) but offers no basis to avoid the mandatory venue rule.

Third, the State's actions have created a complete quagmire which undermine its equitable requests and demand intervention by a higher court. Prior to seeking an anti-suit injunction from Respondent, the State:

- Was on notice of Powered by People's request for relief relating to *quo warranto* on August 11, 2025

- Participated in an August 13, 2025 hearing in El Paso, attempting to argue a plea in abatement;

- Filed a notice of that hearing with the Tarrant County court, including an Order setting a second hearing in El Paso for August 18, 2025;

- Raised in a Tarrant County hearing the pending August 18 hearing in El Paso;

- Participated in a second hearing in El Paso on August 18, 2025 where it argued its plea to the jurisdiction and plea in abatement;

72

- Waited for the El Paso Court to issue an order on August 19, 2025, and then let another whole day pass before filing the instant request.

- Now, has further complicated matters by filing what it purports to be a notice of appeal of "the [El Paso] trial court's implicit denial of it's [sic] Plea to the Jurisdiction." MR.0884-0885. In its notice, the State has taken the position that "all further proceedings in [the El Paso] Court are stayed pending resolution of Defendant's appeal." *Id.*

The State's proper remedy for challenging the El Paso court was a plea in abatement (and appeal), not a collateral anti-suit attack. *See, e.g., Atkinson v. Arnold,* 893 S.W.2d 294, 298 (Tex. App.—Texarkana 1995, no writ). If the State is upset with the El Paso court's actions, it has an "adequate remedy at law[] by appeal." *Id.* Ironically, it is simultaneously attempting to avail itself of that remedy, and is creating chaos by attempting to invoke both this Court's jurisdiction and the jurisdiction of the Tarrant County court over the El Paso court. MR.0884-0885.

Fourth, the State failed to justify its requested relief. Far from being the vexatious or harassing litigation the State claims, MR.0901-0940Powered by People is only reacting to a litany of legal actions that have been launched its way in the span of two weeks. The first being a mandatory statutory

73

investigative tool where the *only* procedure the Supreme Court has explicitly recognized *required* Powered by People to institute its action in El Paso County. *See Paxton v. Annunciation House, Inc.*, No. 24-0573, 2025 WL 1536224, at *24 (Tex. May 30, 2025) (identifying "Rule 176.6(e)" as proper procedure for challenging a Request To Examine); Tex. R. Civ. P. 176.6(e) (requiring that a party seeking a protective order must do so "either in the court in which the action is pending or in a district court in the county where the subpoena was served."). A private plaintiff, with limited resources, using the one procedural tool identified by the Texas Supreme Court to defend itself against the machinery of the government in its home county, where all of its materials and witnesses are located, can hardly be considered a "suit to harass" the government. *Cf. Golden*, 925 S.W.2d at 651 (holding that when "an individual plaintiff with limited resources, chose to file in Harris County, where all his expert witnesses are located," that alone "cannot justify an injunction without eliminating [the] rule that anti-suit injunctions require very special circumstances.") (internal quotation marks and citations omitted).

74

## PRAYER

Powered By People and Robert Francis O'Rourke request a mandamus issue to order Respondent, the Honorable Megan Fahey to dismiss the case for lack of subject matter jurisdiction, or, alternatively, to vacate her rulings denying the Relators' Emergency Motion to Transfer Venue and Emergency Motion to Dissolve Temporary Restraining Order and enter an order transferring the case to the 41st Judicial District Court in El Paso County, Texas. Relators pray for all other and further relief to which they may be entitled.

Respectfully submitted,

*/s/ Sean J. McCaffity*

**Mimi Marziani**
Texas Bar No. 24091906
**Joaquin Gonzalez**
Texas Bar No. 24109935
**Rebecca (Beth) Stevens**
Texas Bar No. 24065381
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Phone: 210-343-5604
mmarziani@msgpllc.com
jgonzalez@msgpllc.com
bstevens@msgpllc.com

-and-

**Sean J. McCaffity**
State Bar No. 24013122
**SOMMERMAN McCAFFITY, QUESADA & GEISLER L.L.P.**
3811 Turtle Creek Blvd, Ste 1400
Dallas, Texas 75219-4461
Phone: 214-720-0720
smccaffity@textrial.com


## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Tex. R. App. P. 9.4 because it contains 14,447 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(2).

This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated: August 25, 2025

*/s/ Sean J. McCaffity*
Sean J. McCaffity


## CERTIFICATION REQUIRED BY TEX. R. APP. P. 52.3(j)

I hereby certify that I have reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

*/s/ Sean J. McCaffity*
Sean J. McCaffity

**CERTIFICATE OF SERVICE**

Pursuant to the Texas Rule of Appellate Procedure, I certify that a true copy of foregoing has this day been sent via Federal Express Overnight Delivery and via e-mail to the respondent, and by and through their counsel of record to the real party in interest and other parties in the underlying lawsuit at the addresses below:

Hon. Megan Fahey
348th Judicial District Court
Tarrant County Courthouse
100 North Calhoun St., 3rd Floor
Fort Worth, TX 76196
Phone: 817-884-2715
ndbentley@tarrantcountytx.gov
LAAdams@tarrantcountytx.gov

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas<br>Rob Farquharson<br>Dep. Chief, Consumer Protection<br>Division<br>State Bar No. 24100550<br>Johnathan Stone<br>Chief, Consumer Protection Division<br>State Bar No. 24071779<br>Office of the Attorney General of<br>Texas<br>Consumer Protection Division<br>300 W. 15th St.<br>Austin, Texas 78701<br>Phone: (214) 290-8811<br>Fax: (214) 969-7615<br>Rob.Farquharson@oag.texas.gov | |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Joaquin Gonzalez on behalf of Joaquin Gonzalez
Bar No. 24109935
jgonzalez@msgpllc.com
Envelope ID: 104826226
Filing Code Description: Original Proceeding Petition
Filing Description: Petition for Writ of Mandamus
Status as of 8/25/2025 7:24 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brian Falligant` | | bfalligant@inquestresources.com | 8/25/2025 5:42:52 PM | SENT |
| Joaquin Gonzalez | | jgonzalez@msgpllc.com | 8/25/2025 5:42:52 PM | SENT |
| Mimi Marziani | | mmarziani@msgpllc.com | 8/25/2025 5:42:52 PM | SENT |
| Rebecca Stevens | | bstevens@msgpllc.com | 8/25/2025 5:42:52 PM | SENT |
| Sean McCaffity | 24013122 | smccaffity@textrial.com | 8/25/2025 5:42:52 PM | SENT |
| Rebecca Neumann | | rneumann@textrial.com | 8/25/2025 5:42:52 PM | SENT |
| Robert Farquharson | 24100550 | rob.farquharson@oag.texas.gov | 8/25/2025 5:42:52 PM | SENT |